UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | | |
|---|---|---|
| RoyaltyStat LLC, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| IntangibleSpring, Corp. | * | Case No.: 8:15-cv-03940-GJH |
| | * | |
| and | * | |
| | * | Hon. Paula Xinis |
| Raul Pacheco Quintanilla | * | |
| | * | |
| Defendants. | * | |

---

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Plaintiff RoyaltyStat, LLC ("RoyaltyStat"), by and through its undersigned attorneys, responds to Defendants' Motion to Dismiss as follows:

### INTRODUCTION

Defendants misrepresent the nature of the various international agreements relating to personal jurisdiction. While the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents and the Inter-American Convention on Letters Rogatory provide means of effecting service, they are not mandatory nor are they exclusive. The bellwether for proper service in a foreign jurisdiction is that the method must be "reasonably calculated to give notice." Defendants do not deny that they received notice, rather they chose to elevate form over substance by arguing that the failure to use a cumbersome and untimely governmental channel to effect service is the only means sufficient to confer jurisdiction. Defendants are wrong, and this Court may proceed. To the extent any question remains as to whether service on Defendants at their known addresses and/or to their known representatives was proper, RoyaltyStat requests

permission to take discovery as to the nature of Defendants' relationship with and authority of the persons upon whom service was made.

Defendants' other arguments are equally unavailing. Those arguments fail in the first instance based solely on the facts as pled in RoyaltyStat's complaint, which must the taken as true. For example, the protectable expression in RoyaltyStat's database includes original text that it authored, which was expressly identified in RoyaltyStat's complaint as a basis for its copyright infringement claim. It therefore cannot be said that RoyaltyStat has not pled a viable claim for copyright infringement. Defendants' arguments further fail as a matter of law. The alleged preemption of RoyaltyStat's unfair competition claims that Defendants advance was expressly rejected by the Supreme Court in the very case Defendants cite, and the statute of limitations cannot bar RoyaltyStat's claims when the defendant that served as the primary vehicle for the violations of RoyaltyStat's proprietary rights did not exist until less than three years before the complaint was filed.

## FACTS

As the Court is no doubt aware, at the motion to dismiss stage, all well-pleaded facts are taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, much of Defendants' factual recitation in their *Brief In Support Of Motion to Dismiss* (hereinafter "Def. Mem.") must be discarded. In addition, Defendants' veiled assertion that it was Defendant Pacheco, as a mere intern, who created the RoyaltyStat database, and that RoyaltyStat made no creative contribution, *see* Def. Mem. at 3, 16-18, is flatly untrue. All of Mr. Pacheco's work was done under the direction and control of RoyaltyStat and its founder, Dr. Silva, a renowned economist with an international reputation who was Mr. Pacheco's economics professor. Complaint, ¶¶ 1, 11-14, 23-25. Mr. Pacheco did not have the accumen or expertise necessary to independently create a

database of the sophistication and level of creativity of RoyaltyStat's. He was, in short, a mere scribner. Any statement or inference to the contrary must therefore be rejected in its entirety.

As a matter of judicial economy, Plaintiff will not respond to the remainder of Defendants' statements, but does state for the record that it contests Defendants' erroneous and revisionist restatement of the relationship between the parties.

## LAW AND ARGUMENT

Defendants challenge sufficiency of process, but apparently otherwise concede personal jurisdiction insofar as they make no argument that the Court would lack authority if process were proper. Similarly, Defendants assert legal defenses, but seem to concede the Complaint adequately pleads the elements of the various causes of action. The Motion to Dismiss should be denied.

### A. Plaintiff Properly Served Defendants

Defendants wrongly assume that service may only properly be effected through formal means established in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague") and the Inter-American Convention on Letters Rogatory (the "IACLR") (collectively the "Conventions"). This position is not supported in the language of the Conventions or in case law.

Importantly for the Court's analysis, Defendants do not deny that they received notice. They instead argue that the methods of service were insufficient, Def. Mem. at 8-11, but neither the case law Defendants cite nor the Conventions they rely upon support that conclusion. Service on individuals in a foreign country is governed by Fed. R. Civ. P. 4(f)(1), which provides that such service may be effected "by any internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial

and Extrajudicial Documents." Rule 4(f)(2) further allows that service "by a method that is reasonably calculated to give notice" is permissible "if an international agreement allows but does not specify other means." Methods reasonably calculated to give notice include those "prescribed by the foreign country's law as for service in that country in an action in its courts of general jurisdiction," unless "prohibited by the foreign country's law." *See* Fed.R.Civ.P.4(f).

While the methods of service stipulated by the Conventions are sufficient, they are not exclusive. *See Paiz v. Castellanos*, No. 06-22046-CIV, 2006 WL 2578807, at *1 (S.D. Fla. 2006); *Pizzabiocche v. Vinelli,* 772 F. Supp. 1245, 1249 (M.D. Fla. 1990). In this case, as set forth below, Plaintiff properly served IntangibleSpring under the IACLR. And the service on Defendant Raul Pacheco Quintanilla ("Pacheco") was similarly proper under the Hague. Plaintiff took the necessary steps to provide reasonable notice to Defendants, and therefore, the Motion to Dismiss should be denied.

**1. Service of Process under the Inter-American Convention on Letters Rogatory was sufficient to serve process on Defendant IntangibleSpring.**

Plaintiff effected service on Defendant IntangibleSpring Corp.'s ("IntangibleSpring") resident agent Zuniga y Asociados. At Plaintiff's direction, a private process server hand delivered a copy of the Complaint, the Summons, and all other pleadings (in both Spanish and in English) to the offices of Zuniga Y Asociados. *See*, Dkt. 14. It did so because IntangibleSpring is a Panamanian corporation. *See* Ex. 1 (IntangibleSpring "Panama Corporation and Foundation Name Search" results obtained from http://www.panama-offshore-services.com/panama_corporation_foundation_name_search.htm?ENTITYNAME=INTANGIBLESPRING&x=21&y=15&TYPE=CORP). As a foreign corporation, IntangibleSpring may be served by internationally agreed means or by those means prescribed by Panama law for service. *See* Fed.R.Civ.P.4(f). While the United States and Panama are both signatories to the IACLR, its

provisions on service of process are neither exclusive nor mandatory. *Paiz v. Castellanos*, No. 06-22046-CIV, 2006 WL 2578807, at *1 (S.D. Fla. 2006). The IACLR does not state that the letters rogatory are the only means of serving process. *Pizzabiocche v. Vinelli*, 772 F.Supp. 1245, 1249 (M.D. Fla. 1990). Moreover, nothing in the language of the IACLR prohibits alternate methods of service, nor does its language expressly reflect an intention to displace alternative methods of service. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 644 (5th Cir.1994); *Laino v. Cuprum S.A. de C.V.*, 235 A.D.2d 25, 663 N.Y.S.2d 275 (1997). Therefore, while methods of service stipulated in the IACLR are sufficient, they are not necessary. *Paiz*, No. 06–22046, 2006 WL 2578807 at * 1; *Kreimerman*, 22 F.3d at 644.

Importantly, Defendants do not deny that they received timely notice. Quite to the contrary, IntangibleSpring obviously received notice inasmuch as it filed the instant Motion within the time prescribed for it to file responsive pleadings. Plaintiff served Zuñiga y Asociados, the Panamanian law firm in Panama that incorporated IntangibleSpring, who also continues to be IntangibleSpring's legal representative and whose address is the same as that provided to the U.S. Patent and Trademark Office by IntangibleSpring. Def. Mem., Ex. C, ¶ 2; Ex. 2, IntangibleSpring U.S. Trademark App. 86/174,112, at 20[1] (identifying IntangibleSpring's address as Torre ADR, Piso 6, Ave. Samuel Lewis y Calle 58, Panama); Dkt. 14, ¶ 4 (identifying same as address for Zuñiga y Asociados). Indeed, to Plaintiff's knowledge, this is the only address that IntangibleSpring, who has declared under penalty of perjury to be doing business in the U.S., *see* Ex. 2 at 20-21, has ever identified to the U.S. government,

---

[1] Also available at
http://tsdr.uspto.gov/#caseNumber=86174112&caseType=SERIAL_NO&searchType=statusSearch.

While Defendant claims that Panamanian law requires a court official to effectuate service of process, it offers no citation to support that claim. It cannot do so because the method Plaintiff used is not expressly prohibited by Panamanian law. All that is required is that the particular method of service not be prohibited by the law in the country in which the service will be effectuated. *Ure v. Oceania Cruises, Inc.*, 122 F. Supp. 3d 1351, 1353-54 (S.D. Fla. 2015); *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 924 (11th Cir.2003). Because service by means of a private investigation firm at the address of the defendant is not prohibited under Panamanian law, the means Plaintiff employed constitutes a valid means of service.

Alternatively, the Court could find that IntangibleSpring was properly served on December 30, 2015, when John Hardy personally served Attorney John DiGiacomo ("DiGiacomo") with a copy of the summons and all of the pleadings filed. Plaintiff sought to effect service on DiGiacomo because he, through his law firm Revision Legal, PLLC, was the last known legal counsel representing IntangibleSpring Corp. in the U.S., which he did in connection with IntangibleSpring's registration of its trademark. *See* Ex. 2 at 21. On December 30, 2015, when Mr. Hardy delivered the papers, DiGiacomo advised Mr. Hardy that he was not authorized to accept service and ordered Mr. Hardy to leave. Mr. Hardy left the papers with DiGiacomo and departed. As he was in the hallway, DiGiacomo threw the papers at Hardy. *See* Ex. 3, Affidavit of John Hardy.

Curiously, despite disavowing any authority to act on behalf of IntangibleSpring, DiGiacomo entered his appearance in this case on June 22, 2016 as counsel for IntangibleSpring. Given that the hallmark of foreign service embodied in Fed. R. Civ. P. 4, and under the Conventions, is reasonable notice, it is at best disingenuous for IntangibleSpring to disavow

service when its own counsel was personally served more than six months ago. Defendants' Motion should be denied.

### 2. Service of Process under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters was sufficient to serve process on Defendant Pacheco.

Defendant Pacheco is a resident of the United Mexican States, and was previously residing, and to Plaintiff's knowledge continues to reside, in France. While France is a signatory to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents, which provides sufficient means of service, the process set forth in the Convention is not exclusive. Service under the Hague Convention is defined as the formal delivery of documents that is legally sufficient to charge defendant with notice of the pending action. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). However, this is not the exclusive mode of service permitted under the Convention. *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 699 (E.D. Va. 2001).

Plaintiffs are permitted under the Convention to use alternative methods of service, as the word "permit" in 20 U.S.T. 362, Art. 19., which authorizes service methods that are sanctioned by law in the receiving country, including the use of a private server to deliver the documents, demonstrates. *Id.*; *see Weight v. Kawasaki Heavy Indus., Ltd.*, 597 F. Supp. 1082 (E.D. Va. 1984) (holding service of process by direct mail pursuant to a Virginia statute was sufficient). There is no requirement that service be effected via the Central Authority, which is apparent based on the language of the treaty, as well as by the fact that France chose not to object to methods of service used by Plaintiff. *See* Hague Conference on Private International Law, France - Central Authority & Practical Information, June 29, 2016, *https://www.hcch.net/en/states/authorities/details3/?aid=256*. Lastly, the Convention does not describe a standard for determining the legal sufficiency of service of process, and thus the

internal law of the forum state controls. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).

RoyaltyStat served the summons and complaint to a person of suitable age at what it identified as Mr. Pacheco's residence in France. *See* Dkt. 13. Defendants admit that Mr. Pacheco has resided in France, and do not deny that the address at which service was made is or was Mr. Pacheco's address. Def. Mem. at 10, Ex. B. Defendants cite no authority indicating that such a method is not reasonably calculated to provide notice of the pending action.

Since the mode of process used by Plaintiff is permitted under French law, and the Hague Convention, the process of service was sufficient.

### 3. To the extent questions remain about sufficiency of service, RoyaltyStat should be granted the right to jurisdictional discovery.

For the reasons outlined above, RoyaltyStat believes that service was properly made on both IntangibleSpring and Mr. Pacheco. In each instance, RoyaltyStat served the summons and complaint at the known address for the respective party, and, in the case of IntangibleSpring, twice on its known legal representatives. Neither has denied that those addresses were proper, only that the persons who received the summons and complaint were not "authorized" to receive service. Accordingly, to the extent the Court is inclined to grant Defendants' motion, RoyaltyStat requests permission to take discovery as to the precise nature of Defendants' relationship with and "authority" of the persons upon whom service was made.

### B. The RoyaltyStat Database is Properly Copyrighted; Defendants' Purloined Use of the Database Constitutes a Violation of Copyright Law

Defendants seek to have RoyaltyStat's copyright claims dismissed based on the assertion that "the RoyaltyStat database does not constitute copyrightable subject matter." Def. Mem. at 11. This assertion must be rejected because it is based entirely on an analysis that is incorrect both legally and factually.

In order for RoyaltyStat's copyright claims to be dismissed pursuant to Fed. R. 12(b)(6), Defendants must show that no viable claim for copyright infringement has been stated. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In the case of arguments about the copyrightable nature of RoyaltyStat's work, this means Defendants must establish that RoyaltyStat's database contains no copyrightable material that discovery might reveal has been copied by Defendants. *Id.*, at 555-56 (proper pleading requires only "enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct). This Defendants cannot do.

To begin with, the fundamental premise of Defendants' argument is that because RoyaltyStat's database "consists of a collection of facts obtained from SEC filings," it is not entitled to any copyright protection. *See* Def. Mem. at 11-12. However, Congress, which has authority over setting the legal boundaries of copyright protection, expressly recognized databases as being subject to copyright protection. U.S. CONST., Art. I, Sec. 8, cl. 8; H.R. REP. NO. 94-1476, at 54 (1976), reprinted in 1976 U.S.C.C.A.N. at 5667. The Copyright Office has echoed this Congressional recognition in the Office's primary administrative operations manual. *See Compendium of U.S. Copyright Office Practices* (3d Ed. Dec. 22, 2014), § 727.

A database is not precluded from copyright protection simply because it is a collection of facts, data, information or references to a particular subject. *Id.*, § 727.1 ("a 'database' is defined as a compilation of digital information comprised of data, information, abstracts, images, maps, music, sound recordings, video, other digitized material, or references to a particular subject or subjects"). Moreover, for a database to qualify for copyright protection, its contents must also be arranged in a systematic manner. *Id.* Defendants' argument that works are not subject to copyright protection because they contain a compilation of factual information arranged in a

systematic manner is clearly contrary to the law. *Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995) (copyright protection in database not precluded simply because database includes factual information).

Moreover, as Defendants cannot dispute, RoyaltyStat's copyrights in its database extend to any and all original works of authorship in the database. *See, e.g., Metropolitan Regional Information Sys., Inc. v. American Home Realty Network, Inc.,* 888 F.Supp.2d 691, 706 (D. Md. 2012) ("an owner and registrant of a [copyrighted database] may bring an infringement action on the underlying parts where it also owns copyrights in the underlying parts, even where those parts have not been individually registered"); *see also* Def. Mem. at 12. As RoyaltyStat expressly alleged in its complaint, its database contains original text created by RoyaltyStat's personnel that does not appear in the source documents from which information is extracted for inclusion in the database. Complaint, ¶ 38. RoyaltyStat expressly identified this text as being copied without authorization by Defendants. *Id.* and Exs. A-B. These allegations must be taken as true for purposes of a motion to dismiss, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), and Defendants have not argued, nor even attempted to argue, that the original text is not subject to copyright protection. Thus, for purposes of a motion to dismiss, RoyaltyStat has stated a viable claim for unauthorized copying of its original work of authorship.[2] *Metropolitan Regional Information Systems*, 888 F.Supp.2d at 706.

Defendants therefore assert that RoyaltyStat has no protectable copyrights in the selection, coordination and arrangement of the data in its database. Def. Mem. at 11-18. While

---

[2] Defendants also allege that RoyaltyStat "has failed to allege that Defendants have copied" the selection and arrangement of the RoyaltyStat database. Def. Mem. at 17. That is not so. *See* Complaint, ¶¶ 44-46. RoyaltyStat has stated a viable claim for infringement of its copyrighted database, and the extent of that infringement will be presented following discovery. That is all that is required to meet the requirements of Fed. R. Civ. P. 8. *Twombly,* 550 U.S. at 555-56.

it is for purposes of the present motion little more than a red herring, Defendants' assertion is fundamentally wrong. RoyaltyStat's copyright registrations provide *prima facie* evidence of the validity of RoyaltyStat's copyrights in all original works of authorship embodied in its database. 17 U.S.C. § 410(c); *Metropolitan Regional Information Systems*, 888 F.Supp.2d at 705. In order for RoyaltyStat's database to be registered, it was examined by the Copyright Office and was determined to meet the minimal threshold of originality required for copyright protection. 17 U.S.C. § 410(a); *Compendium*, § 309.

Defendants have presented no evidence that would rebut this presumption. Instead, they merely argue without support that RoyaltyStat's database consists of "facts ... arranged in an unoriginal manner." Def. Mem. at 12. The only support that Defendants do provide is premised on an erroneous legal standard. According to Defendants, RoyaltyStat's database cannot be protected because its content is "pulled from ... license agreements of third parties, which are publicly available," and do not rise to the level of "Shakespearian sonnets." *Id.* at 15-16. However, as noted above, a collection of factual data and information organized in a systematic manner is copyrightable. *Compendium*, § 727.1.

Originality for purposes of copyright protection does not require a work to be a "Shakespearian sonnet." To the contrary, originality means simply that the work was independently created and has a minimum degree of creativity. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991). Defendants have made no assertion that RoyaltyStat's database was not independently created, nor can they credibly do so. According to RoyaltyStat's allegations in its complaint, which must be taken as true, the database was created by personnel, including RoyaltyStat's principal, Dr. Silva, as a work made for hire for

RoyaltyStat.[3] Complaint, ¶¶ 11-14. As to creativity, the level of creativity necessary is "extremely low" and the "vast majority of works make the grade quite easily." *Feist*, 499 U.S. at 346. The level of creativity that went into creating the RoyaltyStat database, see Complaint, ¶¶ 11-17, is well above that threshold.

The circumstances presented here are therefore almost identical to those of previous cases in which the Court upheld the copyright protection in a database. For instance, in *Metropolitan Regional Information Systems ("MRIS")*, the plaintiff asserted infringement of its copyrights in "an automated database consisting of compiled property listings and related informational content." 888 F.Supp.2d at 696. Just as Defendants attempt to do here, the defendant in *MRIS* alleged that the plaintiff had no legitimate copyrights because its database contained only information uploaded "on automatic pilot" by subscribers. *Id.* at 710; Def. Mem. at 15 ("the content contained within the RoyaltyStat database is provided by third party aggregators of SEC filings and is not created by RoyaltyStat"). The Court rejected this argument, finding that the minimum level of original expression was established as a result of the plaintiff's integration of real estate listing with public records, and its creation and ongoing maintenance of the asserted database. 888 F.Supp.2d at 710. The same is true here where RoyaltyStat has selected information from the selected agreements, integrated and arranged it with other publicly available information, including SIC codes and SEC filing information, and original text, and creates and maintains the ongoing database. Complaint, ¶¶ 13-17; Ex. C at 26-28; Ex. D at 52-53.

---

[3] Again, as noted above, *see supra* at 2-3, Defendants' attempted suggestion that Mr. Pacheco, a mere scribner without the capability to independently create a database as sophisticated and creative as RoyaltyStat's, is unfounded and must be rejected.

As stated above, the Copyright Office has already determined that RoyaltyStat's database meets the required threshold of originality and nothing in the cases cited by Defendants justifies setting aside that determination. For example, in *Want Ad Digest, Inc. v. Display Advertising, Inc.*, 653 F.Supp.2d 171 (N.D.N.Y. 2009), a decision from outside the Fourth Circuit upon which Defendants heavily rely, the asserted work consisted solely of advertisements provided by third parties with no discretionary selection on the part of the plaintiff, and no addition of original material apart from headings and subheadings and the arrangement of the advertisements in alphabetical or numeric order. *Id.*, at 179. That is clearly distinguishable from the present situation where RoyaltyStat has added, *inter alia*, original text that does not appear in the documents from which other information is drawn. The same is true for other cases, also from outside the Fourth Circuit, cited by Defendants. *See Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 730-31 (8th Cir. 2002) (category headings not sufficiently original); *Salestraq Am., LLC v. Zyskowski*, No. 2:08-CV-013-68, 2010 WL 186003, at *2 (D. Nev. Jan. 15, 2010) (sole issue was whether floor plans were copyrightable, but plaintiff did not create them, only collected them); *Victor Lalli Enterprises, Inc. v. Big Red Apple, Inc.*, 936 F.2d 671, 672 (2d Cir. 1991) (alleged works consisted solely of information in charts that did not "vary in the slightest as between publishers").

In short, RoyaltyStat's creation and maintenance of a database that includes original text, as well as the selection, coordination and arrangement of information as described above, "certainly requires more creativity than simply listing subscribers' submissions in alphabetical order." *MRIS*, 888 F.Supp.2d at 710. Thus cases regarding nothing more than phone books or other directories are insufficient to carry Defendants' burden of showing that RoyaltyStat's copyrights are invalid. *Montgomery County Ass'n of Realtors*, 878 F. Supp. at 810.

Defendants' motion to dismiss based on the alleged invalidity of RoyaltyStat's copyrights must therefore be denied.

## C. Defendants Have Engaged in Actionable False Advertising

Defendants base their motion to dismiss RoyaltyStat's false advertising claims on two grounds, namely, that RoyaltyStat has pled Defendants' misrepresentations "upon information and belief," and that RoyaltyStat's false advertising claims are preempted by the copyright law. Def. Mem. at 21-22. Defendants first assertion is defeated by the very authority it cites in its brief. As that authority makes clear, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" *Mann Bracken, LLP v. Executive Risk Indemnity, Inc.*, No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015), *quoting Kajoshaj v. New York City Dept. of Ed.*, 543 F. App'x 11, 16 (2d Cir. 2013). The precise statements that Defendants made to others is particularly within their knowledge and control. Alleging those statements upon information and belief is therefore entirely appropriate. *See id.*

Defendants' preemption argument fails for two reasons. First, as Defendants point out, deception is an element of RoyaltyStat's false advertising claim. Def. Mem. at 20. As the courts have recognized in implementing the Supreme Court's rulings regarding the intersection of copyright and Lanham Act claims, because deception is not an element of a copyright infringement claim, Lanham Act claims such as false advertising are not preempted by copyright law. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG–06–2662, 2011 WL 4596043, at *8 (D. Md. Sept. 30, 2011).

Moreover, preemption is inapplicable to unfair competition claims, particularly false advertising claims, where the issue is not the attribution to the originator of the creative or

14

inventive expression of an accused product, but the misrepresentation of the nature or source of

the product itself. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003)

(expressly recognizing false advertising as cause of action not preempted under copyright law).

The primary case cited by Defendants illustrates the point. In that case, the plaintiff's contention

was that defendant had committed unfair competition by copying and displaying website

designs, logos, etc., she had created while employed by plaintiff. *Mays & Assoc., Inc. v. Euler*,

370 F.Supp.2d 362, 364 (D. Md. 2005). The defendant included a disclaimer revealing that the

works had been created for plaintiff, but the plaintiff alleged the disclaimer was insufficient

because it failed to give plaintiff attribution for its "creative work in the development,

implementation, design, and execution" of the works "reproduced and displayed" by defendant.

*Id.,* at 371. The court found preemption because plaintiff's unfair competition went to the origin

of the "idea, concept, or communication embodied" in the accused products, and not to the

nature or quality of the products themselves. *Id.*

That is not the case here, where RoyaltyStat's unfair competition claims relate solely to

the misrepresentation by Defendants of the nature and quality of their products and services

themselves in an effort to unfairly and illegally divert sales from RoyaltyStat. Compl., ¶¶ 49-54.

For example, RoyaltyStat has alleged that IntangibleSpring has made false claims about the

number of records in its database, and that the analysis is of the same or similar quality as that

provided by RoyaltyStat. *Id.*, ¶¶ 35-36. Such misrepresentations can give rise to false

advertising or other unfair competition claims, regardless of whether Defendants copied content

of their database from RoyaltyStat. *Dastar*, 539 U.S. at 38.

Accordingly, contrary to Defendants' assertions (*see* Def. Mem. at 22), RoyaltyStat has

properly alleged that (1) Defendants made false and misleading statements of fact in the course

of advertising their goods and services (Compl., ¶¶ 35, 40-41, 50-51), (2) the misrepresentations were material because they were likely to influence third party purchasing decisions (*id.*, ¶¶ 40-41), (3) actual deception occurred as a result of Defendants' misrepresentations (*id.*), and (4) Defendants' statements were made in interstate commerce (*id.*, ¶¶ 9, 40-41). Defendants' misrepresentations are actionable as false advertising, and thus copyright preemption does not apply.

Defendants' motion to dismiss as to RoyaltyStat's false advertising claim must therefore be denied.

### D. Plaintiff's Claims Are Timely

#### 1. Defendants Infringed on Plaintiff's Copyright Within the Applicable Period.

Defendants' assertion that RoyaltyStat's copyright infringement claims are barred by the statute of limitations is again fatally flawed both factually and legally. To begin with, RoyaltyStat expressly alleged copying of protected material in 2013, the year in which RoyaltyStat learned of IntangibleSpring's existence and potential copying. Complaint, ¶¶ 33, 39; see also Ex. 2 at 20 (alleging April 1, 2013 as IntangibleSpring's first use in U.S. commerce). The complaint was filed on December 23, 2015, months before the earliest date the statute of limitations would be triggered. Thus, RoyaltyStat's allegations, which must be taken as true and are, in any event, not denied by Defendants, completely eviscerate Defendants' assertion of the statute of limitations.

Defendants attempt to argue that because RoyaltyStat became aware that the individual defendant, Mr. Pacheco, was embezzling funds as of 2009 and downloading RoyaltyStat's database in December 2010-January 2011, it should have been aware of copyright infringement (Def. Mem. at 19), is totally without merit for several reasons. First, Mr. Pacheco remained

employed as an independent contractor with authorized access to RoyaltyStat's database until September 2011. Complaint, ¶28; Def. Mem. at 19. Downloading with permission is not infringement. Second, embezzlement does not equal copyright infringement. The embezzlement at issue here means only that Mr. Pacheco was fraudulently diverting funds that he was entrusted to collect for and on behalf of RoyaltyStat. BLACK'S LAW DICTIONARY (10th Ed. 2014). Those funds were generated through the authorized sale of subscriptions to RoyaltyStat's copyrighted database. Complaint, ¶¶ 16, 25. Thus, the discovery of Mr. Pacheco's embezzlement would provide no reason to investigate infringement of copyright or any other intellectual property right.

Finally, Defendants studiously ignore the nature of copyrights granted to authors such as RoyaltyStat. Copyrights are, by statute, divisible rights; a copyright owner has the right to separately preclude others from not just copying, but also distributing and creating derivative works based on the owner's copyright material. 17 U.S.C. §§ 106, 501; *MRIS*, 888 F.Supp.2d at 704 ("One infringes a copyright when he or she violates one of the copyright owner's exclusive rights").

The best that can be said for Defendants' argument is that RoyaltyStat should have been alerted to Mr. Pacheco's unauthorized reproduction of RoyaltyStat's protected work. Even if that were so, RoyaltyStat would have had no indication that Mr. Pacheco was, for example, distributing RoyaltyStat's work without permission by and through IntangibleSpring before IntangibleSpring was even formed. That unlawful distribution only became known to RoyaltyStat in 2013, thereby triggering a separate statute of limitations for violation of RoyaltyStat's exclusive rights to distribute its copyrighted work. Nothing about that situation precludes suit here. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199,

203 (4th Cir. 1997) (reversing summary judgment for defendant based on statute of limitations because evidence of distribution of unauthorized copy within the statutory period provided a timely basis for suit).

For all the foregoing reasons, Defendants's argument that RoyaltyStat's copyright infringement claims are precluded by the statute of limitations must be dismissed.

### 2. Defendants' Misappropriation of Trade Secrets Occurred Within 3 Years.

Defendants accurately identify the statute of limitations under the Maryland Uniform Trade Secrets Act as requiring actions to be brought within 3 years. Def. Mem. at 22. They then adopt a false premise that Plaintiff's subsequent post-hoc realization that Defendant Pacheco downloaded the RoyaltyStat database in 2010 and 2011, while he was employed by RoyaltyStat, should have put Plaintiff on inquiry notice of the misappropriation.

### a. Defendants' Misappropriation First Accrued Within Three Years of Plaintiff's Complaint.

Maryland courts recognize a plaintiff "should have known" of a cause of action at the point that (i) she has "knowledge of the circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation" and (ii) an investigation "pursued would have led to knowledge of the alleged tort." *Penwald Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155, 1163 (Md. 1988). The duty to investigate, of course, arises "once a plaintiff has reason to know that she has been injured." *Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir. 1993). This concept, implicit in the discovery rule, "gives a 'blamelessly ignorant' plaintiff who exercises reasonable diligence the full benefit of the statutory period in which to file suit." *Id.* at 92-93 (citation omitted).

Defendant Pacheco admits taking RoyaltyStat subscription payments totaling "approximately $287,000" through the use of a Mexican entity he owned and/or controlled

named Diadorim SA de CV. Def. Mem. at 4. This revelation, of course, comes as quite a shock to Plaintiff who had no idea that Pacheco had embezzled that much money while employed by RoyaltyStat. That fact notwithstanding, Defendants would have the Court find that, because it knew Defendant Pacheco was engaged in what it believed to be a relatively small embezzlement scheme, Plaintiff necessarily knew or should have known of his subsequent misappropriation of trade secrets. This is a wholly non-sequitur proposition insofar as the two torts were neither directly related nor dependent upon one another.

Admittedly, Plaintiff knew or could have established to a reasonable degree of certainty that Defendant Pacheco had downloaded some amount of data from Plaintiff's servers prior to his discharge for embezzlement. Because he did so during a time when he was still employed by Plaintiff, though, it had no reason to know that he intended to utilize the data he procured for an improper purpose. Indeed, it was not until Defendant Pacheco used Plaintiff's trade secrets for the purposes of self-enrichment by selling subscriptions to the database he set up using RoyaltyStat's own proprietary database that the appropriation became a wrongful one. *Sokol Cristyal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1430 (7th Cir. 1994) ("At least in the commercial setting at issue here, suspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11... Seeing [the defendant producing a similar product] surely led Sokol to be concerned that its trade secrets were going to be misappropriated. But ... these apprehensions were still just concerns and suspicions rather than *knowledge* of misuse.") (emphasis in original).

### b. Plaintiff's Claims Against IntangibleSpring Are In Any Event Proper.

The Fourth Circuit confronted circumstances similar to those in the case at bar in *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (1999). In *Hoechst*, the defendants sought

dismissal of a trade secrets law suit alleging, *inter alia*, the claims were not timely under the applicable statute of limitations. *Id.* at 419. In that case, a former employee misappropriated Hoechst's trade secrets in contravention of his confidentiality agreement. *Id.* at 420. The former employee subsequently sold the trade secrets at issue to Nan Ya. *Id.* Nan Ya argued that the relevant misappropriation was that of the former employee and that, because Hoechst was aware of that misappropriation, the three-year limitations period ran from the date of the original misappropriation. *Id.*

The Fourth Circuit rejected Nan Ya's argument finding that "Hoecht's awareness of Nan Ya's alleged misappropriation, not [the former employee's] misappropriation, triggered the limitations period." *Id.* Rather, the court found that "Nan Ya's own receipt and use of the In-Line Technology would constitute a separate, actionable injury, thus would trigger an independent, three-year limitations period when Hoechst 'knew or had reason to know' of this transaction." *Id.* at 421.

A similar result should obtain here. Should the Court find that Pacheco's misappropriation occurred prior to December 23, 2012, that fact does not bar Plaintiff's action against IntangibleSpring, which did not even exist as of that date. Moreover, until IntangibleSpring set up its website and started selling the wrongfully purloined database, Plaintiff had no way to know of its misappropriation of Plaintiff's trade secrets.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) should be denied, or, in the alternative, RoyaltyStat allowed to take jurisdictional discovery, and Defendants' motion pursuant to Fed.R. Civ. P. 12(b)(6) must be denied in its entirety

Dated: July 7, 2016              Respectfully Submitted,


*/s/ Billy B. Ruhling, II*
Billy B. Ruhling, II (Fed. Bar No. 17827)
Cecil E. Key (Bar No. 805447)
DiMuroGinsberg, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Tel: 703-684-4333
Fax: 703-548-3181
bruhling@dimuro.com
*Counsel for RoyaltyStat LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 7, 2016, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will automatically serve the following counsel of record:

Merritt J. Green
General Counsel, P.C.
6849 Old Dominion Drive
Suite 220
McLean, VA 22101
Tel: 703-556-0411
Fax: 888-222-6807
Email: mgreen@gcpc.com

John Anthony Di Giacomo
Revision Legal, PLLC
109 E. Front St., Suite 309
Traverse City, Michigan 49684
Tel: 231-714-0100
Fax: 231-714-0200
Email: john@revisionlegal.com

/s/ Billy B. Ruhling, II
Billy B. Ruhling, II (Fed. Bar No. 17827)