UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

ROYALTYSTAT, LLC,

a Maryland limited liability company,

      Plaintiff,

           v.

INTANGIBLESPRING Corp.

a Panamanian corporation,

and

RAUL PACHECO QUINTANILLA,

a resident of the United Mexican States,

      Defendant.

Case No.: 8:15-cv-03940-GJH

Hon. Paula Xinis

_____

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF PARTIAL MOTION TO DISMISS

Defendants IntangibleSpring Corp. and Raul Pacheco Quintanilla, by and through their attorneys Revision Legal, PLLC, hereby state for their Reply Brief in Support of Partial Motion to Dismiss the following:

## I.   PLAINTIFF FAILED TO PROPERLY SERVE DEFENDANTS

Plaintiff admits it did not use the safe harbors of the Hague Convention or the Inter-American Convention on Letters Rogatory; instead, Plaintiff argues its service was proper under Panamanian and French law and thus, is proper under Fed. R. Civ. P. 4(f)(2). In a telling admission, Plaintiff fails to provide a single citation in support of this conclusion. These naked assertions do not carry Plaintiff's burden. *Miller v. Baltimore City Bd. of Sch. Comm'rs,* 833 F.Supp.2d 513, 516

(D. Md. 2011) (Once a defendant challenges service of process, the plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of the applicable rules). And while it is true that service rules are construed liberally provided the defendant has notice, the Fourth Circuit has also cautioned, that "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod–Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1089 (4th Cir.1984); *see also Tart v. Hudgins,* 58 F.R.D. 116, 117 (M.D.N.C.1972) (observing that a liberal interpretation of process requirements "does not mean ... that the provisions of the Rule may be ignored if the defendant receives actual notice"). In this case, Plaintiff's attempts to complete service and its justifications for the same are so deficient, especially in light of the fact service is being completed on sovereign land, that this Court should dismiss the Complaint and force Plaintiff to follow the rules.

Plaintiff claims that under Panamanian law, service on a Panamanian company is proper through its registered agent. Of course, no citation is provided to support this claim. And that is because Plaintiff is wrong. As stated in **Exhibit 1**,[1] Article 1002 requires personal service of the summons and complaint. As a result, service on a registered agent is not a permissible method of service under Panamanian law. Plaintiff's arguments about the address on file with the United States Patent and Trademark Office, or attempts to serve an attorney in Michigan not authorized to accept service, are meritless and do nothing to counter the fact that Plaintiff's attempt at service failed to comply with Fed. R. Civ. P. 4.

Plaintiff claims service in France was proper because the summons and complaint was served "to a person of suitable age at what it identified at Mr. Pacheco's residence in France." Mr.

---

[1] **Exhibit 1** is a signed opinion by Ramon De La O Fernandez Sinisterra, an attorney in Panama, along with his translation of an excerpt of Article 1002 of the Panamanian Judicial Court) and an non-translated version of the entire document.

Pacheco has already testified he was not served in France. See Dkt. No. 21-2.  And Plaintiff has done nothing to explain why its form of service was proper. This is not Defendant's burden to carry and not the Court's job to investigate.

Discovery on how to complete service is not required. The federal rules set the standards. Plaintiff has simply ignored those rules and failed to provide any insight into why it believes its form of service was proper under Panamanian or French law.

## II.  PLAINTIFF'S ABILITY TO CLAIM COPYRIGHT RIGHTS IS INHERENTLY LIMITED

Plaintiff claims to possess copyright rights in a database largely consisting of facts contained within public records. Compl. at ¶ 12. Plaintiff is claiming copyright rights in the selection and arrangement of the facts and whatever original authorship it provided within the database. Compl. at ¶ 44. However, Plaintiff's Complaint relies on a copyright registration (the '781 Registration) and a Royalty Tableau Application (hereafter the Pending Application) that either do not –or cannot– provide the rights Plaintiff claims.

### A.  The Public Facts Contained within the Database Are Not Subject to Copyright Protection

Plaintiff admits a large majority of the content within its database is obtained from public sources. Compl. at ¶ 12. Plaintiff does not own this data. These are public facts and are not capable of being protected under federal law, no matter the expense involved with uncovering the raw data. *Feist Publications, Inc v Rural Tel Serv Co, Inc*, 499 US 340, 344 (1991) (it is well established that "facts are not copyrightable").

### B.  Plaintiff Has No Ability to Claim Copyright Infringement as to the Selection or Arrangement of the Public Data

Plaintiff does not dispute the reality that public facts are not subject to copyright, but maintains that the database itself is subject to copyright protection.  P's Brief at 9. Citing the

Compendium of U.S. Copyright Practices, Plaintiff contends a database is subject to copyright protection, provided its contents are arranged in a "systematic manner." P's Brief at 9.

i.   **Plaintiff Has Not Alleged Facts Regarding the Originality of the Selection or the Systematic Arrangement of Public Facts**

In its Response, Plaintiff states that ¶¶11-17 allege specific facts to show the database's selection and arrangement of data is original enough to deserve copyright protection. P's Brief at 10-11. However, these paragraphs largely explain the work needed to create the database. The "sweat of the brow" is irrelevant to the question of copyright protection. *Feist Publications*, 499 US 340, 359-60. Plaintiff makes no specific allegation regarding how its database was selected or arranged or how it was created in a "systematic" manner. A reading of the Complaint leaves Defendant unaware of exactly how or why Plaintiff claims the data was selected or how or why it is arranged in a specific manner. While the Complaint alleges that users can use "filters" to find records relating to "Standard Industrial Classifications," "intellectual property type," and "keywords," the Complaint fails to provide any specific factual allegations as to what makes the "selection" or "arrangement" of the public facts deserving of copyright protection.

Instead, to prove the arrangement is subject to copyright protection, Plaintiff points to the mere existence of the '781 Registration and Pending Application. Plaintiff argues these "registrations" provide prima facie evidence of the validity of its copyrights that Defendant has failed to rebut. But, Plaintiff's sole reliance on the rights provided by the '781 Registration and the Pending Application are misplaced.

ii.   **The '781 Registration Does Not Cover Plaintiff's Selection or Arrangement of Public Facts**

The copyright in a work of authorship created or first published after January 1, 1978 is protected from the moment it is created, provided that the work is original and fixed in a tangible

medium of expression. 17 U.S.C. §§ 102(a), 408(a); Compendium § 502. In other words, formal registration with the U.S. Copyright Office is not a requirement to the acquisition of copyright rights. As a result, the U.S. Copyright Office does not *issue* copyrights, but instead, "*registers claims* to copyright. 17 U.S.C. § 408(a); Compendium § 502 (emphasis added). A copyright "claim" is an "assertion of copyright [ownership in]…the work." Compendium § 502 citing *Applications for Registration of Claim to Copyright Under Revised Copyright Act*, 42 Fed. Reg. 48, 944 (Sept. 26, 1977). "Thus, when an applicant files an application to register a work of authorship, the applicant is asserting a claim of ownership in the copyright in that work. Compendium § 502. The Compendium makes clear that only the specific authorship claimed in the application is what is reviewed and ultimately registered:

> As a general rule, a registration for a work of authorship covers the entire copyrightable content of the authorship that is (i) claimed in the application, (ii) is owned by the claimiant, and (iii) is contained in the deposit copy[ies].

> The applicant should assert a claim in this authorship in the online application by completing the Author Created field, and if appropriate, the New Material Included field…Together, these fields and spaces provide important information about the scope of the claim of authorship in a work. Applicants are encouraged to be specific when completing these portions of the application. A clear description of the copyrightable expression that the applicant intends to register creates an accurate record of authorship and ownership for the benefit of the copyright owner, the courts, and the general public.

> The fact that a work was submitted for registration and was registered by the U.S. Copyright Office does not necessarily mean that the registration covers all the authorship that appears in the work as a whole. As discussed in Section 503.3, the Office examines and registers only the copyrightable authorship that is expressly claimed in the application and that is included in the deposit copy(ies). The Office does not examine any authorship that is not claimed in the application, and it cannot examine any authorship that does not appear in the deposit copy(ies).

Compendium § 504.

The Compendium also provides information relating to the protection of "databases." Importantly, it instructs applicants how to assert a "claim" to copyright within the database. The Compendium states that if an applicant "intends to register the authorship involved in selecting, coordinating, and/or arranging the material that appears in the database, the applicant may use any of the terms listed below, provided that they accurately describe the copyrightable authorship that appears in the deposit copies…compilation of data, compilation of database information, compilation of photographs, compilation of artwork, compilation and text, revised and updated compilation." See § 727.3(D).

But, that is **not** what Plaintiff claimed. Specifically, Plaintiff only asserted a claim to copyright in "text." See **Exhibit 2**, '781 Registration. Because Plaintiff only asserted a claim to "text," the Copyright Office never reviewed the deposit[2] material for any other type of claim to copyright. Compendium § 504. The '781 Registration defines the scope of copyrights Plaintiff may claim and it does not include the selection or arrangement of public data. See *Express, LLC v Fetish Group, Inc*, 424 F Supp 2d 1211, 1219 (CD Cal 2006) ("Thus, if the registration does not cover certain aspects of a claimed copyright, then it simply does not make sense to grant those aspects of the claimed copyright a presumption of validity. Why would those aspects of the claimed copyright have earned a presumption of validity if they were not represented in the registration

---

[2] Copyright Circular No. 65 describes the process to register a database, including the type of specimen that should be deposited (i.e., the first and last 25 pages of records for single-file database or 50 data records or pages for a multiple-file database). See **Exhibit 3**, Circular 65. Plaintiff's deposit, attached to its '781 Registration, is merely a printout of nine records allegedly within the database and fails to comply with Circular 65. This, combined with Plaintiff's failure to make a claim to the selection and arrangement confirms that Plaintiff does not own a registered copyright to a database, but instead, owns a registered copyright to text on its website. Further compounding the problem, Plaintiff failed to disclaim any material that Plaintiff did not author. See Compendium at § 503.5. Plaintiff failed to disclaim any material whatsoever, which calls the entire '781 Registration into question.

application? Cases from other courts support this view.") As a result, Plaintiff cannot sue for copyright infringement of the selection or arrangement of facts based on the '781 Registration.

### iii.   Plaintiff's Claimed Rights Under the Pending Application Must Be Dismissed

Plaintiff's reliance on the Pending Application does not save its attempt to claim rights regarding the selection and arrangement of the data because a pending application is insufficient for a claim of copyright infringement. Registration, not a pending application, is required before Plaintiff may maintain this action.

The Copyright Act specifically provides, in part, that "no civil action for infringement of the copyright in any United States works shall be instituted until preregistration or registration of the copyright claim has been made." 17 U.S.C. § 411(a). It is well known that the federal circuits are split on the interpretation of § 411(a)'s "registration" requirement. Some courts have taken an "application approach," in which a pending copyright registration application is sufficient to satisfy the statute. Other courts have taken the "registration approach," which requires a certificate of registration issued by the Copyright Office as a precondition to suit. The Fourth Circuit has not addressed this issue. *Hoge v Schmalfeldt*, 2014 WL 3052489 at * 9 (D. Md. 2014). But, this Court has addressed the issue. Specifically, in 2005 this Court stated "the plain language of the Copyright Act, reflecting sound public policy, requires registration of a copyright or denial of same as jurisdictional prerequisites to instituting an action for copyright infringement." *Mays & Associates v. Euler*, 370 F.Supp.2d 362 (D. Md. 2005).

However, in 2010, the Supreme Court provided *some* clarification regarding § 411(a)'s "registration" requirement, but notably, did not clear up the circuit split identified above. In *Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 164–65 (2010), the Court clarified that § 411(a)'s

"registration" requirement is not "jurisdictional" requirement, but remains a "precondition" to filing suit. *Id*. at 157.

In 2014, this Court addressed *Mays* in light of *Reed Elsevier*, however, the Court failed to make any holding specific to § 411(a)'s "registration" requirement. *Hoge*, *supra*. While *Mays* was based on a now misplaced "jurisdictional prerequisite" analysis, its interpretation of § 411(a) stands as the most persuasive, and controlling, authority within this District. The distinction between a "jurisdictional" requirement and a "precondition" to suit is immaterial to the fact that, in this District, a copyright registration is required to bring suit pursuant to § 411(a). As a result, whatever rights are claimed in the Pending Application are insufficient to state a claim for copyright infringement. See *North Jersey Media Group v Sasson*, 2013WL74237 (D. NJ 2013); See also 5 Patry on Copyright § 17:83:60 (2016) - Opinions after *Reed-Elsevier*.

### iv. Plaintiff Has Not Alleged Defendant Infringed Plaintiff's Arrangement of the Public Facts

It bears repeating that Plaintiff's Complaint fails to make any specific factual allegation that Defendant copied whatever selection and arrangement that is part of Plaintiff's claimed rights. As a result, this Court should limit Plaintiff's ability and enter an order finding Plaintiff lacks protectable copyright rights in the selection and arrangement of its public facts within the database.

### C. Plaintiff's Original Text Is Not Deserving of Copyright Protection

Because Plaintiff cannot claim any rights to the selection or arrangement of the factual data, Plaintiff is left claiming rights to the original authorship contained within the '781 Registration only. The "original" text Plaintiff claims to have authored is largely pulled from the public records, however, it is impossible to determine the extent of claimed "originality" within this original text without reviewing extrinsic evidence. In any event, Defendant reserves the right to challenge the originality of statements such as "integrated circuits employing high performance

CMOS processes on a silicon substrate having only an array of programmable logic cells consisting of basic gate and flip-flop elements interconnected by row and columns of programmable wiring channels" apart from the public document that, at a minimum, forms the basis for the Plaintiff's "original" text."

### III. PLAINTIFF FAILED TO STATE A CLAIM FOR FALSE ADVERTISING

Plaintiff states Mr. Pachero started working for Plaintiff as an "outside contractor" "extracting data fields from license agreements that [Plaintiff] purchased." Compl. at ¶ 24. Mr. Pacheco then worked in customer service and sales. *Id.* "In both capacities, he was given unlimited access to the [Plaintiff's] License Agreements Database,[3] its process, its content, and its trade secrets." *Id.* Mr. Pacheco was given "unfettered access." *Id.*

In 2009, Plaintiff states it learned Mr. Pacheco embezzled Plaintiff's funds.  Compl. at ¶ 27. Plaintiff further states Mr. Pacheco stole Plaintiff's data on December 1, 2010, December 14, 2010, and January 28, 2011. Compl. at ¶ 29. Plaintiff also claims Mr. Pacheo unlawfully downloaded Plaintiff's license agreements on three other "additional dates." Compl. at ¶ 30. In September 23, 2011, Plaintiff terminated Mr. Pacheco "for cause" due to "abandonment of customer support work, deception, and failure to sell new subscriptions." Compl at ¶ 28. Plaintiff claims all the documents downloaded by Mr. Pacheo were "trade secrets," largely because Plaintiff claims to have placed procedural constrains on the access to information. Specifically, Plaintiff claims "all" contractors were required to sign a "confidentiality/non-disclosure agreement." Compl. at ¶ 14. Further, Plaintiff contends that all database subscribers are required to sign Subscription Agreement that places specific limitations on a subscriber's use. Compl. at ¶ 18. Yet Plaintiff, with the exception of the statement that "all" contractors signed a "confidentiality/non-

---

[3] This is the Complaint's first and only reference to the undefined "RoyaltyStat License Agreement Database." What is this, a new database in which Plaintiff is claiming rights?

disclosure agreement," fails to make any specific allegation that Mr. Pacheo was subject to the confidentiality/non-disclosure agreement or the Subscription Agreement.

Plaintiff then learned about IntangibleSpring's existence in 2013. Compl. ¶ 32. And at this time, Plaintiff alleged IntangibleSpring had "almost precisely the same number of records in its database as RoyaltyStat had as of the time Mr. Pacheco was fired." *Id*. Plaintiff continues, "[n]ot coincidentally, the number of records cited by the competitor was almost identical to the number of records stolen by Mr. Pacheco on the dates identified above." Plaintiff also alleges that Defendant obtained its records subsequent to 2013. Compl. at ¶ 39.

What did Defendants do that constitutes false advertising? Plaintiff states the following allegations provides its claim for false advertising

35. By April 19, 2013, IntangibleSpring claimed that its database contained more than 10,500 records. IntangibleSpring falsely claimed to be adding more than 600 records per month.

40. Mr Pacheco has contacted several of RoyaltyStat's customers and offered subscriptions of stolen data for about 1/3 of the RoyaltyStat regular subscription price. Several former RoyaltyStat customers who switched to IntangibleSpring, who are reputable businesses have confirmed that they would not have switched except for the deception and significantly lower prices offered by Mr. Pacheo.

41. By misrepresenting the product it offers as being comparable in content, but lower in price to that provided by RoyaltyState, IntangibleSpring has enticed some of RoyaltyStat's customers to switch to its service. This has caused RoyaltyStat to lose significant revenue and profits.

50. Upon information and belief, Defendants' have represented to their clients and potential clients, including those who are current or former clients of RoyaltyStat, that IntangibleSpring's data base is the same as RoyaltyStat's in content and quality, but is offered for a lower price. RoyaltyStat devotes substantial resources to updating its database and assuring that the data is of the highest integrity. As a result of these substantial efforts over many years, RoyaltyStat and its founder Dr. Silva, have developed a reputation for the high-quality of the RoyaltyStat database. Apart from portions of RoyaltyStat's database that they have copied, Defendants have not and cannot maintain a database of similar quality. Defendants' cannot therefor offer a database product that is similar to RoyaltyStat's in content and quality for a lower price.

51. Defendants' statements constitute a false and misleading representation of fact regarding the nature and quality of both RoyaltyStat database and IntangibleSpring database. Defendant's actions were undertaken to deliberately trade on the goodwill and reputation RoyaltyStat has developed as a result of the high quality of its product and services. Defendant's actions therefore constitute unfair competition and false advertising pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

In others words, ¶ 35's allegations of the total number of records within IntangibleSpring's database, according to Plaintiff, was correct. See Compl. at ¶ 39. ¶ 40's allegations pertain only to price and contain no facts or allegations regarding "deception." ¶ 41 repeats the claimed misrepresentation in comparable content, which again is at odds with ¶ 39's admission that the two competitors provided nearly identical content. ¶ 50, based on "information and belief"[4] claims Defendant cannot maintain a database of "similar quality." But Plaintiff never make any specific allegations of the "quality" Defendant alleged attributed to its database. Finally, ¶ 51 is a mere conclusory statement and of no weight when considering whether Plaintiff stated a claim.

Plaintiff is upset because it believes Defendant stole its data and sold it for a lower price. Assuming *arguendo* that was true, <u>maybe</u> it is actionable under a different cause of action. However, ¶¶ 35, 40-41, and 50-51 simply do not cut it to make a claim for false advertising given Plaintiff's contradictory allegations within the Complaint, namely, that Defendants were providing the same content as Plaintiff.

## IV. PLAINTIFF'S COPYRIGHT AND TRADE SECRET CLAIMS ARE TIME BARRED

### A. Plaintiff's Copyright Infringement Claim is Time Barred

---

[4] Many courts require plaintiffs to comply with Fed. R. Civ. P. 9(b)'s heightened pleading requirements for claims of false advertising under the Lanham Act. The Forth Circuit has not addressed or decided this issue. See *Trident Products & Services, LLC v Canadian Soiless Wholesale, Ltd*, No. 3:10CV877-HEH, 2011 WL 2938483, at *3 (ED Va July 19, 2011) (and cases cited therein). Defendants contend this is the proper standard of analysis, but that Plaintiff fails to state a claim under traditional Fed. R. Civ. P. 8(a) standards as well.

Plaintiff argues that IntangibleSpring's distribution constitutes a separate claim to copyright infringement and triggers a separate statute of limitations period as opposed to Mr. Pacheco's alleged copying. Even if this is accepted as true at this stage of litigation, this limits Plaintiff's ability to recover damages as recovery is permitted only for those acts occurring within three years of suit. See *Hoey v Dexel Sys Corp*, 716 F Supp 222, 223 (ED Va 1989). The fact remains that according to Plaintiff's Complaint, in "late 2009" Plaintiff "learned that Mr. Pacheco was embezzling funds from the company…." Compl. at ¶ 27. Plaintiff terminated Mr. Pacheco for "deception" on September 23, 2011. Compl. at ¶ 28. A claim for copyright infringement accurses when "one has knowledge of a violation or is chargeable with such knowledge. *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997). A plaintiff may not "postpone the running of the statute of limitations by willfully closing his eyes, ostrich-like, to a known probability that he has been injured, even if he is not certain." 6 Patry on Copyright § 20:19 citing *U.S. v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000). It is unreasonable to conclude that Plaintiff was aware of that Mr. Pacheco downloaded Plaintiff's files, engaged in embezzlement, and was fired for "deception," yet Plaintiff was wholly unaware of claims for copyright infringement. Plaintiff's claims for damages must be limited to the alleged actions within three years of filing suit. 17 U.S.C. § 507.

### B.  Plaintiff's Trade Secret Claim is Time Barred

Plaintiff admits it "knew or could have established to a reasonable degree" that Mr. Pacheco downloaded some amount of data from Plaintiff's servers prior to his discharge. P's Brief at 19. But Plaintiff claims that since Mr. Pacheco was still working for Plaintiff, there was no reason to believe Mr. Pacheco's downloading of Plaintiff's content was wrong, thus, the time to file did not accrue until IntangibleSpring started competing with Plaintiff. Plaintiff's sudden

laissez-faire attitude to a contractor downloading its data stands in stark contrast to the Complaint. See Compl. at ¶¶ 29-31, 56-57. And Plaintiff's conclusion as to what actions start the trade secrets clock is wrong.

Under the Maryland Uniform Trade Secrets Act misappropriation is defined as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Md. Code Ann., Com. Law § 11-1201(c)(1). The acquisition by wrongful means, downloading the data outside Mr. Pacheco's purported authority, starts the clock, not IntangibleSpring's later use. Plaintiff's incorrect conclusion basing the start of the limitations period on IntangibleSpring's use is derived from its reliance on *Sokol Crystal Products, Inc. v DSC Communications Corp*, 15 F.3d 1427, 1429 (CA 7 1994), a case based on Wisconsin state law that defined misappropriation "as either (1) acquiring a trade secret by improper means, Wis.Stat. § 134.90(2)(a), or (2) "disclosing or using ... a trade secret of another," *id.* at § 134.90(2)(b)." Maryland law does not provide a "use-based" trigger to the limitations period. See Md. Code Ann., Com. Law § 11-1201(c)(1).

Defendant attempts to muddy the waters by arguing that the limitations period should not start until its discovery of IntangibleSpring's sale of the allegedly stolen data. Again, Plaintiff relies on case law interpreting another state's trade secret act, this time South Carolina, that also provides a "use" based definition of trade secret misappropriation. See *Hoechst Diafoil Co v Nan Ya Plastics Corp*, 174 F3d 411, 417 (4th Cir. 1999) citing S.C. Code § 39–8–1(2)(ii)(B)(III) (finding the defendant engaged in a second "statutorily-recognized injury" when it "used" the technology at a later date). There is no such second "statutorily-recognized injury" in this case. Instead, this is a continuing misappropriation, which does not restart the clock. Md. Code Ann., Com. Law § 11-1206(b). While Defendant contends the alleged 2009 embezzlement should start

13

the clock, at the latest, Plaintiff's allegation of a December 1, 2010 misappropriation certainly does. See Compl. at ¶ 29. Plaintiff's suit filed in 2015 is outside the three-year limitations period and is time barred. Md. Code Ann., Com. Law § 11-1206(b).

## CONCLUSION

Plaintiff's Complaint was not properly served and should be dismissed. Further, Plaintiff's Complaint overstates its claims to copyright protection of the '781 Registration and the Pending Application. As a result, Plaintiff's claims to copyright infringement of the selection and arrangement of the data should be dismissed with prejudice. Plaintiff's remaining claims as to the "original authorship" of certain text is extremely limited, both in scope and in recoverable damages, and is subject to further defenses. Plaintiff's Complaint simply does not allege facts amounting to false advertising because this is not a false advertising case. This case rings as a trade secret case. Unfortunately for Plaintiff, that claim is time barred under Maryland's definition of misappropriation. For the reasons stated above, Defendants respectfully request this Court GRANT its Motion to Dismiss.

_____/s/_____

Merritt J. Green, Esq.
Bar No. 28241
General Counsel, P.C.
6849 Old Dominion Drive
Suite 220
McLean, VA  22101
Tel: 703-556-0411
Fax: 888-222-6807
Email: mgreen@gcpc.com

John Di Giacomo
Revision Legal, PLLC
Attorneys for Defendant
109 E. Front St. Ste. 309
Traverse City, MI 49684
eric@revisionlegal.com

john@revisionlegal.com
*Admitted Pro Hac Vice*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 25, 2016, I electronically filed the foregoing Motion to Dismiss and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Billy B Ruhling , II
DiMuroGinsberg PC
1101 King Street
Suite 600
Alexandria, VA 22314
703-684-4333
Fax: 703-548-3181
Email: bruhling@dimuro.com

Respectfully submitted,

       /s/
_____
Merritt J. Green, Esq.
Bar No. 28241
General Counsel, P.C.
6849 Old Dominion Drive
Suite 220
McLean, VA  22101
Tel: 703-556-0411
Fax: 888-222-6807
Email: mgreen@gcpc.com


John Di Giacomo
Revision Legal, PLLC
Attorneys for Defendant
109 E. Front St. Ste. 309
Traverse City, MI 49684
eric@revisionlegal.com
john@revisionlegal.com