UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
Greenbelt Division

RoyaltyStat LLC,
          Plaintiff                *
                                    *

v.                                      *
                                    *

IntangibleSpring, Corp.         *        Case No.: 8:15-cv-03940-GJH
                                    *

and                                  *
                                    *        Hon. Paula Xinis

Raul Pacheco Quintanilla      *
                                    *

          Defendants.

---

## PLAINTIFF'S RESPONSE TO PARTIAL MOTION TO DISMISS

Plaintiff RoyaltyStat, LLC ("RoyaltyStat"), by and through its undersigned attorney, responds to Defendants' Partial Motion to Dismiss as follows:

## INTRODUCTION

Defendants preface their motion with an unsupported and unverified factual narrative that is entirely irrelevant for a motion to dismiss.  At the appropriate time procedurally, Plaintiff will demonstrate to the Court that Defendants' narrative is pure fiction, but for present purposes, the best that can be said is that Defendants themselves have demonstrated that there are issues of fact that preclude granting their motion to dismiss.  In addition to these factual issues, Defendants have ignored or distorted the controlling law and cherry-picked statements from the complaint, while ignoring others, to manufacture positions that simply cannot be sustained.

Taken together with Defendants' past behavior, it is clear that Defendants' motion is  a delay tactic to allow them to further benefit from the use of RoyaltyStat's intellectual property. Defendants have stalled long enough.  It is now time to move this matter forward.  Defendants'

motion should therefore be denied so the parties can move forward with discovery and preparation for trial, so that RoyaltyStat's rights can finally be vindicated.

## FACTS

Defendants devote several pages of their motion to a recitation of "facts" that are outside the pleadings and nothing more than unsubstantiated attorney argument that must be left to explore during discovery. Meanwhile, RoyaltyStat's complaint alleges the process by which RoyaltyStat identifies agreements to be included in its database, identifies the specific information to be extracted from those agreements, identifies comparables, adds original text, and creates searchable data fields. Complaint, ¶¶ 11-13, 38. That is all that is required at this point; the additional details will be fleshed out in discovery.[1]

---

[1] Specifically, RoyaltyStat will demonstrate during discovery that it sifts through the over 21 million filings at the Securities and Exchange Commission ("SEC"), including many "form types" such as 8-K, 10-K, and 10-Q filings. RoyaltyStat has identified and downloaded 3,400,766 form types from the SEC. From these 3.4 million form types, RoyaltyStat has identified and parsed 14,751,968 exhibits. From these 14.8 million exhibits, RoyaltyStat has classified only 19,068 exhibits as license agreements, and of these only 12,365 were "true positives" license agreements. Defendant Pacheco purloined the SEC document address of each true positive license agreement, which contains the Central Index Key (CIK) and the accession number of each true positive agreement. It costs RoyaltyStat over $1.2 million per year to find less than 1,000 true positive license agreements, and RoyaltyStat has invested over $17 million dollars over almost 20 years to create a unique proprietary collection of information that it has arranged in searchable data fields in its database. Without the SEC document address, Defendants would likewise have to invest millions of dollars to create a database comparable in quality to that RoyaltyStat has built over 20 years. Once RoyaltyStat has selected the data to be included, it creates several proprietary data fields that are unique to its database. For example, the Description of Intangibles field has a specific textual structure extracted from several paragraphs of the agreement, then conformed to a legacy standard, and then again subject to copy-editing quality control by a dedicated copy-editor. Likewise, the royalty base is proprietary because RoyaltyStat has created a harmonized expression of a royalty base from the various expressions in the agreement to make the extracted rates amenable to online or interactive statistical analysis. Defendants are fully aware of these details, and RoyaltyStat intends to establish that knowledge when Defendants must respond to discovery requests under oath.

As the Court is aware, at the motion to dismiss stage, all well-pleaded facts are taken as true.  As a matter of judicial economy, Plaintiff will therefore not respond to the remainder of Defendants' statement of purported facts, but does state for the record that it contests Defendants' erroneous and revisionist restatement of the relationship between the parties.  For these reasons, much of Defendants' factual recitation must be discarded.

For purposes of assessing Defendants' motion, the facts that are pertinent and that can be properly considered are as follows:

1.      Defendants are not challenging RoyaltyStat's tortious interference claim, which is grounded in the same accusations of unauthorized copying as RoyaltyStat's remaining claims. *See* Complaint, ¶¶ 61-67.  Thus, there is no dispute that Defendants' unauthorized copying of RoyaltyStat's proprietary database will remain at issue in this case.

2.      Defendant Pacheco acted with permission in accessing, copying and selling subscriptions to RoyaltyStat's proprietary database until his dismissal on September 23, 2011. *See* Complaint, ¶ 31.  Any copying or use of the database prior to that date would therefore not have raised any suspicion or suggestion that Pacheco intended to establish and sell a purloined database.

3.      Defendant IntangibleSpring did not exist until August 2012.  *See* Complaint, ¶ 32. RoyaltyStat did not know of Intangible's existence, let alone its activities at that point.  *See id.*, ¶ 4.

4.      RoyaltyStat first learned of Defendants' selling subscriptions to a database copied from RoyaltyStat in April 2013.  Complaint, ¶ 4.  Some of the material RoyaltyStat subsequently learned was copied by Defendants did not exist until September 2013.  *Id.*, ¶ 39.

5.     RoyaltyStat then contacted the FBI regarding Defendants' activities, and the FBI began an investigation.  After that investigation concluded, RoyaltyStat filed its complaint on December 23, 2015, less than three years after learning of Defendants' activities.

## LAW AND ARGUMENT

### A. The RoyaltyStat Database is Properly Copyrighted and RoyaltyStat Has Adequately Pled that Defendants' Illicit Copying Is A Violation of Copyright Law

Defendants attempt to attack the merits of RoyaltyStat's copyright claims by asserting that (1) there is no copyrightable expression in RoyaltyStat's database (*see* Def. Mem. at 8-14), (2) RoyaltyStat's selection, coordination and arrangement in its database is not covered by its Copyright Registration No. TX7-233-781 (the "'781 Registration") (*see id*. at 14-16), and (3) RoyaltyStat has not alleged facts explaining the selection, coordination and arrangement that constitutes its copyrightable subject matter (*see id*. at 16-18).  These assertions, each of which is demonstrably incorrect both factually and legally, are addressed in turn below.

### 1.     RoyaltyStat's Database Constitutes Copyrightable Subject Matter

Defendants seek dismissal of RoyaltyStat's copyright claims based on the assertion that "the RoyaltyStat database does not constitute copyrightable subject matter."  Def. Mem. at 8. This assertion is unsustainable on either the facts or the law.

In order for RoyaltyStat's copyright claims to be dismissed pursuant to Fed. R. 12(b)(6), Defendants must show that no viable claim for copyright infringement has been stated.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  In the case of arguments about the copyrightable nature of RoyaltyStat's work, this means Defendants must establish that RoyaltyStat's database contains ***no*** copyrightable material that has been copied by Defendants. *Id*., at 555-56 (proper pleading requires only "enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct).  This Defendants cannot do.

4

To begin with, the fundamental premise of Defendants' argument is that because RoyaltyStat's database "consists of a collection of facts obtained from SEC filings," it is not entitled to any copyright protection. *See* Def. Mem. at 8-9. However, Congress, which has authority over setting the legal boundaries of copyright protection, expressly recognized databases as being subject to copyright protection. U.S. CONST., Art. I, Sec. 8, cl. 8; H.R. REP. NO. 94-1476, at 54 (1976), reprinted in 1976 U.S.C.C.A.N. at 5667. The Copyright Office has echoed this Congressional recognition in the Office's primary administrative operations manual. *See Compendium of U.S. Copyright Office Practices* (3d Ed. Dec. 22, 2014), § 727.

A database is not precluded from copyright protection simply because it is a collection of facts, data, information or references to a particular subject. *Id*., § 727.1 ("a 'database' is defined as a compilation of digital information comprised of data, information, abstracts, images, maps, music, sound recordings, video, other digitized material, or references to a particular subject or subjects"). Moreover, for a database to qualify for copyright protection, its contents must also be arranged in a systematic manner. *Id.* Defendants' argument that such works are not subject to copyright protection is clearly contrary to the law. *Montgomery County Ass'n of Realtors, Inc. v. Realty Photo Master Corp*., 878 F. Supp. 804, 810 (D. Md. 1995) (copyright protection in database not precluded simply because database includes factual information).

Defendants next attempt to argue with no factual support that RoyaltyStat's database consists only of "facts … arranged in an unoriginal manner." Def. Mem. at 9. Relying on Paragraph 9 of RoyaltyStat's Complaint, Defendants assert that RoyaltyStat's database cannot be protected because it is based on content that is "provided by third party aggregators … and is not created by RoyaltyStat," and the database does not rise to the level of "Shakespearian sonnets." *Id*. at 11-12. Paragraph 9 describes IntangibleSpring and its purported business; it says nothing

5

about supposed "third party aggregators," and thus provides no factual support of Defendants' positions.  In the end, Defendants know full well that RoyaltyStat's database contains proprietary data fields, which are extracted, normalized, and copy-edited, and is therefore not simply a collection of SEC documents, and that reality is reflected in the allegations of RoyaltyStat's complaint.  *See, e.g.*, Complaint, ¶¶ 11-13 (describing RoyaltyStat process of extracting "searchable data fields" from unredacted documents, and searching for and selecting comparables in integrating information from newly added documents).

As noted above, a database does not lack originality simply because it is a collection of factual data and information organized in a systematic manner.  *Compendium*, § 727.1. Originality for purposes of copyright protection does not require a work to be a "Shakespearian sonnet."  To the contrary, originality means simply that the work was independently created and has a minimum degree of creativity.  *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991).

Defendants have made no assertion that RoyaltyStat's database was not independently created, nor can they credibly do so.[2]  According to RoyaltyStat's allegations in its complaint, which must be taken as true, the database was created by personnel, including RoyaltyStat's principal, Dr. Silva, as a work made for hire for RoyaltyStat.  Complaint, ¶¶ 11-14.  As to creativity, the level of creativity necessary is "extremely low" and the "vast majority of works make the grade quite easily."  *Feist*, 499 U.S. at 346.  Defendants themselves admit that RoyaltyStat's database includes "descriptions of technology" and "descriptions of facts," with no suggestion that those descriptions are not original to RoyaltyStat.  *See* Def. Mem. at 12.  Original

---

[2]  In due course, RoyaltyStat will demonstrate why the training, experience and specialized expertise of Dr. Silva, RoyaltyStat's founder and the  architect of its database (*See* Complaint ¶¶ 1, 23) belies any suggestion that Defendant Pacheco was told to "figure it out" (Def. Memo at 3) when hired by RoyaltyStat.

written expression such as these RoyaltyStat descriptions is one of the oldest form of works protected by copyright.

The circumstances presented here are therefore almost identical to those of previous cases in which the Court upheld the copyright protection in a database.  For instance, in *Metropolitan Regional Information Systems* ("*MRIS*"), the plaintiff asserted infringement of its copyrights in "an automated database consisting of compiled property listings and related informational content."  888 F.Supp.2d at 696.  Just as Defendants attempt to do here, the defendant in *MRIS* alleged that the plaintiff had no legitimate copyrights because its database contained only information uploaded "on automatic pilot" by subscribers.  *Id*. at 710; Def. Mem. at 11-12 ("the content contained within the RoyaltyStat database is provided by third party aggregators of SEC filings and is not created by RoyaltyStat").  The Court rejected this argument, finding that the minimum level of original expression was established as a result of the plaintiff's integration of real estate listings with public records, and its creation and ongoing maintenance of the asserted database.  888 F.Supp.2d at 710.  The same is true here where RoyaltyStat has selected information from the selected agreements, integrated and arranged it with other publicly available information, including SIC codes and SEC filing information, and original text, and creates and maintains the ongoing database.  Complaint, ¶¶ 13-17; Ex. C at 26-28; Ex. D at 52-53.

Nothing in the cases cited by Defendants supports or suggests a different result here.  For example, in *Want Ad Digest, Inc. v. Display Advertising, Inc*., 653 F.Supp.2d 171 (N.D.N.Y. 2009), a decision from outside the Fourth Circuit upon which Defendants heavily rely, the asserted work consisted solely of advertisements provided by third parties with no discretionary selection on the part of the plaintiff, and no addition of original material apart from headings and

subheadings and the arrangement of the advertisements in alphabetical or numeric order. *Id.*, at 179. That is clearly distinguishable from the present situation where RoyaltyStat has added, *inter alia*, original text that does not appear in the documents from which other information is drawn. The same is true for other cases, also from outside the Fourth Circuit, cited by Defendants. *See Schoolhouse, Inc. v. Anderson*, 275 F.3d 726, 730-31 (8th Cir. 2002) (category headings not sufficiently original); *Salestraq Am., LLC v. Zyskowski*, No. 2:08-CV-013-68, 2010 WL 186003, at *2 (D. Nev. Jan. 15, 2010) (sole issue was whether floor plans were copyrightable, but plaintiff did not create them, only collected them); *Victor Lalli Enterprises, Inc. v. Big Red Apple, Inc.*, 936 F.2d 671, 672 (2d Cir. 1991) (alleged works consisted solely of information in charts that did not "vary in the slightest as between publishers").

In short, RoyaltyStat's creation and maintenance of a database that includes original text, as well as the selection, coordination and arrangement of information as described in RoyaltyStat's complaint and above, "certainly requires more creativity than simply listing subscribers' submissions in alphabetical order." *MRIS*, 888 F.Supp.2d at 710. Thus, cases regarding nothing more than phone books or other directories are insufficient to carry Defendants' burden of showing that RoyaltyStat's copyrights are invalid. *Montgomery County Ass'n of Realtors*, 878 F. Supp. at 810.

Defendants' motion to dismiss based on the alleged invalidity of RoyaltyStat's copyrights must therefore be denied.

### 2. RoyaltyStat's Issued Registration Provides Ample Basis for Assertion of Its Claims

Defendants' argument regarding what is and is not covered by RoyaltyStat's '781 Registration is essentially a backdoor attempt to force a jurisdictional requirement that does not exist. Defendants assert that because RoyaltyStat's '781 Registration did not include the phrase

"selection, coordination and arrangement" on its face, and because a copyright must be registered or an application for registration rejected before suit can be brought, 17 U.S.C. § 411(a), RoyaltyStat "cannot sue for copyright infringement of the selection or arrangement of facts" based on its '781 Registration.  *See* Def. Mem. at 16.  This argument is directly contrary to the controlling law.

It is well-settled law in this Court that RoyaltyStat's copyrights in its database extend to all original works of authorship in the database.  *See, e.g., Metropolitan Regional Information Sys., Inc. v. American Home Realty Network, Inc.,* 888 F.Supp.2d 691, 706 (D. Md. 2012) ("an owner and registrant of a [copyrighted database] may bring an infringement action on the underlying parts where it also owns copyrights in the underlying parts, even where those parts have not been individually registered"); *see also* 37 C.F.R. § 202.3(b)(4)(i)(A) (providing for registration of all "copyrightable elements [of published works] that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same").  Moreover, as the Supreme Court has made clear, registration is not a jurisdictional requirement for bringing a copyright infringement suit.  *Reed-Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010).  That, however, is precisely the result Defendants seek by asking the Court to adopt their characterization of the protectable expression in RoyaltyStat's database that is the subject of the '781 Registration – which, as noted above, is unsubstantiated – and order that RoyaltyStat cannot maintain an action for copyright infringement based on that Registration.

The sole authority cited by Defendants on this issue, *Express, LLC v. Fetish Group, Inc*., 424 F.Supp.2d 1211, 1219 (C.D. Cal. 2006), does not help Defendants' argument.  That case involved the question of what design elements were entitled to a presumption of validity when

the copyright holder had apparently disclaimed protection of certain elements. *Id*. at 1220. No such disclaimer is at stake here. Moreover, the *Express* court acknowledged the "overwhelming" authority holding that omission of the description of copyrightable elements on a copyright registration does not bar infringement suits based on those elements unless the defendant has detrimentally relied on the omission. *Id*. at 1222. No such detrimental reliance has been asserted here and even if it were, it would simply raise a factual question that can't be resolved on a 12(b)(6) motion. And, in the end, the *Express* court found the asserted copyrights to be valid and infringed by a "virtually identical" work. *Id*. at 1229. RoyaltyStat fully expects the same result here.

Defendants' suggestion that the original selection, coordination and arrangement in RoyaltyStat's database covered by the '781 Registration cannot be enforced in federal court is clearly contrary to the established law, and must be rejected.

### 3.   RoyaltyStat Has Adequately Pled Infringement of Its Copyrights

In its complaint, RoyaltyStat expressly identified copyrighted material that Defendants illicitly copied. For example, RoyaltyStat expressly alleged that its database contains original text created by RoyaltyStat's personnel that does not appear in the source documents from which information is extracted for inclusion in the database. Complaint, ¶ 38. RoyaltyStat expressly identified this text as being copied without authorization by Defendants. *Id*. and Exs. A-B. These allegations must be taken as true for purposes of a motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

RoyaltyStat's allegations of unauthorized copying of RoyaltyStat's copyrighted text are in and of themselves sufficient to defeat Defendants' motion to dismiss. *See Twombly*, 550 U.S. at 555-56. In addition, contrary to Defendants' assertions (*see* Def. Mem. at 18), RoyaltyStat

expressly pled that Defendants copied without authorization the protectable expression in the selection, coordination and arrangement of the material in its database, which is the subject of the '781 Registration and RoyaltyStat's pending copyright application. *See* Complaint, ¶¶ 44-46. At a minimum, RoyaltyStat has stated a viable claim for infringement of its copyrighted database, and the extent of that infringement will be presented following discovery. That is all that is required to meet the requirements of Fed. R. Civ. P. 8. *Twombly*, 550 U.S. at 555-56; *Metropolitan Regional Information Systems*, 888 F.Supp.2d at 706.

Incredibly, Defendants nevertheless assert that "[a] reading of the Complaint leaves Defendant unaware of exactly how or why Plaintiff claims the data was selected or how or why it is arranged in a specific manner." Def. Mem. at 17. This basic question was answered in the first few paragraphs of the Complaint: "RoyaltyStat has expended and continues to expend a great deal of effort and money to identify and obtain unredacted agreements, and to extract searchable data fields from them. The information RoyaltyStat makes available to paid subscribers is used in transfer pricing, purchase price allocation, intellectual property valuation, and for due diligence connected with litigation, corporate bankruptcy, business development, and mergers and acquisitions." Complaint, ¶ 11. RoyaltyStat then adds original written descriptions and other data not found in the agreements, and arranges all this information into a database, examples of which were submitted with the Complaint and cited to by Defendants. *Id.*, ¶ 38.

All this provides ample basis for a plausible claim of copyright infringement, which is all that is required to defeat Defendants motion to dismiss. *Twombly*, 550 U.S. at 570.

## B.  Defendants Have Engaged in Actionable False Advertising

Defendants base their motion to dismiss RoyaltyStat's false advertising claims on three grounds, namely, that RoyaltyStat pled Defendants' misrepresentations "upon information and

belief," that RoyaltyStat's pleaded allegations are not sufficiently specific, and that RoyaltyStat's false advertising claims are preempted by the copyright law.  Def. Mem. at 20-23.  Defendants first assertion is defeated by the very authority it cites in its brief.  As that authority makes clear, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'"  *Mann Bracken, LLP v. Executive Risk Indemnity, Inc.*, No. DKC 15-1406, 2015 WL 5721632, at *7 (D. Md. Sept. 28, 2015), *quoting Kajoshaj v. New York City Dept. of Ed.*, 543 F. App'x 11, 16 (2d Cir. 2013).  RoyaltyStat's false advertising claims are based on false and misleading representations of fact made by Defendants as part of an intentional effort to unfairly divert business from RoyaltyStat.  Complaint, ¶¶ 49-54.  The precise statements that Defendants made to others is particularly within their knowledge and control.  Alleging those statements upon information and belief is therefore entirely appropriate.  *See Mann Bracken*, 2015 WL 5721632, at *7.

Defendants' second argument is based on a reading of the complaint that is so contrived and convoluted that it is tantamount to be an intentional misrepresentation of the plain language of the complaint.  For example, Defendants cherry-pick citations to certain paragraphs of the complaint, beginning with Paragraph 35, and somehow conclude that RoyaltyStat's "allegations of the total number of records within IntangibleSpring's database … was correct."  Def. Mem. at 21-22.  It is not clear what Defendants are trying to say, but to the extent it is an attempt to argue that Defendants honestly represented the nature of their purloined database, that is not so.

In the paragraphs that Defendants failed to address, RoyaltyStat pled that its database covers more than 16,500 licenses (Complaint, ¶ 16), that the information in the database requires extensive efforts to obtain, coordinate and arrange (*id.*, ¶ 17), that the records contained original analysis under the direction of a renowned economist (*id.*, ¶¶ 1, 23), that Defendant Pacheco was

first a mere reader extracting data fields and then a salesman (*id.*, ¶ 24) and that Defendants were falsely claiming to be adding more than 600 records a month to their purloined database (*id.*, ¶ 35).   Based upon these facts, RoyaltyStat then expressly alleged that "Defendants cannot therefore offer a database product that is similar to RoyaltyStat's in content and quality for a lower price." *Id.*, ¶ 50.   Taken as true, RoyaltyStat has alleged a specific statement of fact that is, as shown by the underlying alleged facts, false and misleading.   Contrary to Defendants' contrivances, RoyaltyStat has identified a "tangible, real world act or event" of false advertising that, taken as true, more than meets the requirements of Fed. R. Civ. P. 8.   *See* Def. Mem. at 22-23, citing *In re Lilley*, No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bakr. M.D.N.C. Apr. 13, 2011).

Defendants' preemption argument fails for two reasons.   First, as Defendants point out, one of the elements that must be established for a false advertising claim such as RoyaltyStat's is the defendant's act of deception.   Def. Mem. at 20.   As the courts have recognized in implementing the Supreme Court's rulings regarding the intersection of copyright and Lanham Act claims, because deception is not an element of a copyright infringement claim, Lanham Act claims such as false advertising are not preempted by copyright law.   *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG–06–2662, 2011 WL 4596043, at *8 (D. Md. Sept. 30, 2011).

Moreover, preemption is inapplicable to unfair competition claims, particularly false advertising claims, where the issue is not the attribution of the originator of the creative or inventive expression of an accused product, but the misrepresentation of the nature or quality of the product itself.   *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38 (2003) (expressly recognizing false advertising as cause of action not preempted under copyright law).   The primary case cited by Defendants illustrates the point.   In that case, the plaintiff's contention

was that defendant had committed unfair competition by copying and displaying website designs, logos, etc., she had created while employed by plaintiff. *Mays & Assoc., Inc. v. Euler*, 370 F.Supp.2d 362, 364 (D. Md. 2005). The defendant included a disclaimer revealing that the works had been created for plaintiff, but the plaintiff alleged the disclaimer was insufficient because it failed to give plaintiff attribution for its "creative work in the development, implementation, design, and execution" of the works "reproduced and displayed" by defendant. *Mays & Assoc., Inc. v. Euler*, 370 F.Supp.2d 362, 371 (D. Md. 2005). The court found preemption because plaintiff's unfair competition went to the origin of the "idea, concept, or communication embodied" in the accused products, and not to the nature or quality of the products themselves. *Id*.

That is not the case here, where RoyaltyStat's unfair competition claims relate solely to the misrepresentation of the *nature and quality* of Defendants' products and services in an effort to unfairly and illegally divert sales from RoyaltyStat. Compl., ¶¶ 49-54. For example, RoyaltyStat has alleged that IntangibleSpring has made false claims about the number of records in its database, and that the analysis is of the same or similar quality as that provided by RoyaltyStat. *Id*., ¶¶ 35-36. Such misrepresentations provide a separate and independent basis for false advertising or other unfair competition claims, regardless of whether Defendants copied content of their database from RoyaltyStat. *Dastar*, 539 U.S. at 38.

Accordingly, contrary to Defendants' assertions (*see* Def. Mem. at 22), RoyaltyStat has properly alleged that (1) Defendants made false and misleading statements of fact in the course of advertising their goods and services (Complaint, ¶¶ 35, 40-41, 50-51), (2) the misrepresentations were material because they were likely to influence third party purchasing decisions (*id*., ¶¶ 40-41), (3) actual deception occurred as a result of Defendants'

misrepresentations (*id*.), and (4) Defendants' statements were made in the course of offering services in interstate commerce (*id*., ¶¶ 9, 40-41).  Defendants' misrepresentations are actionable as false advertising, and thus copyright preemption does not apply.

Defendants' motion to dismiss as to RoyaltyStat's false advertising claim must therefore be denied.

### C.  Plaintiff's Claims Are Timely

#### 1.  Defendants Infringed on Plaintiff's Copyright Within the Applicable Period

Defendants' assertion that RoyaltyStat's copyright infringement claims are barred by the statute of limitations is again fatally flawed both factually and legally.  To begin with, RoyaltyStat expressly alleged copying of protected material in 2013, the year in which RoyaltyStat learned of IntangibleSpring's existence and potential copying.  Complaint, ¶¶ 33, 39.  The complaint was filed on December 23, 2015, months before the statute of limitations would be triggered.  Thus, RoyaltyStat's allegations, which must be taken as true and are, in any event, not denied by Defendants, completely eviscerate Defendants' assertion of the statute of limitations.

Defendants attempt to argue that because RoyaltyStat became aware that the individual defendant, Mr. Pacheco, was embezzling funds as of 2009 and downloading RoyaltyStat's database in December 2010-January 2011, it should have been aware of copyright infringement (Def. Mem. at 19), is totally without merit for several reasons.  First, Mr. Pacheco remained employed as an independent contractor with authorized access to RoyaltyStat's database until September 2011.  Complaint, ¶28; Def. Mem. at 19.  Downloading with permission is not infringement.  Second, embezzlement does not equal copyright infringement.  The embezzlement at issue here means only that Mr. Pacheco was fraudulently diverting funds that he was entrusted

to collect for and on behalf of RoyaltyStat. BLACK'S LAW DICTIONARY (10th Ed. 2014). Those funds were generated through the sale of subscriptions to RoyaltyStat's copyrighted database that Mr. Pacheco was authorized to make. Complaint, ¶¶ 16, 25. Thus, the discovery of Mr. Pacheco's embezzlement would provide no reason to investigate infringement of copyright or any other intellectual property right. In fact, the amount of funds embezzled by Raul Pacheco, admitted as being $287,000, is alarming and was unknown to RoyaltyStat. Rational business behavior dictates that had that large figure become known, RoyaltyStat would have certainly pursued it. This further demonstrates why Defendants' assertion, while raising an issue for discovery, prides no basis for banning RoyaltyStat's copyright infringement claim.

Finally, Defendants studiously ignore the nature of copyrights granted to authors such as RoyaltyStat. Copyrights are, by statute, divisible rights; a copyright owner has the right to preclude others from not just copying, but also distributing and creating derivative works based on the owner's copyright material. 17 U.S.C. §§ 106, 501; *MRIS*, 888 F.Supp.2d at 704 ("One infringes a copyright when he or she violates one of the copyright owner's exclusive rights").

The best that can be said for Defendants' argument is that RoyaltyStat should have been alerted to Mr. Pacheco's unauthorized reproduction of RoyaltyStat's protected work. Even if that were so, RoyaltyStat would have had no indication that Mr. Pacheco was, for example, distributing RoyaltyStat's work without permission by and through IntangibleSpring before IntangibleSpring was even formed. That unlawful distribution is a separate and distinct violation of RoyaltyStat's copyrights that only became known to RoyaltyStat in 2013, and thus does not preclude suit here. *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 203 (4th Cir. 1997) (reversing summary judgment for defendant based on statute of limitations

because evidence of distribution of unauthorized copy within the statutory period provided a timely basis for suit).

For all the foregoing reasons, Defendants' argument that RoyaltyStat's copyright infringement claims are precluded by the statute of limitations must be dismissed.

### 2.   Defendants' Misappropriation of Trade Secrets Occurred Within 3 Years

Defendants accurately recite that actions under the Maryland Uniform Trade Secrets Act must be brought within 3 years.  Def. Mem. at 22.  They adopt a false premise, though, when they argue Plaintiff's post-hoc realization that Defendant Pacheco downloaded the RoyaltyStat database in 2010 and 2011, while he was employed by RoyaltyStat, should have put Plaintiff on inquiry notice of the misappropriation.  This is incorrect for several reasons.

### a.   Defendants' Misappropriation First Accrued Within Three Years of Plaintiff's Complaint

Maryland courts recognize a plaintiff "should have known" of a cause of action at the point that (i) she has "knowledge of the circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation" and (ii) an investigation "pursued would have led to knowledge of the alleged tort."  *Penwald Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155, 1163 (Md. 1988).  The duty to investigate, of course, arises "once a plaintiff has reason to know that she has been injured."  *Hartnett v. Schering Corp.*, 2 F.3d 90, 92 (4th Cir. 1993).  This concept, implicit in the discovery rule, "gives a 'blamelessly ignorant' plaintiff who exercises reasonable diligence the full benefit of the statutory period in which to file suit."  *Id*. at 92-93 (citation omitted).

Defendant Pacheco admits taking RoyaltyStat subscription payments totaling "approximately $287,000" through the use of a Mexican entity he owned and/or controlled named Diadorim SA de CV.  Def. Mem. at 4.  This revelation, of course, comes as quite a shock

to Plaintiff who had no idea that Pacheco had embezzled nearly that much money while employed by RoyaltyStat.  That fact notwithstanding, Defendants would have the Court find that, because it knew Defendant Pacheco was engaged in what it believed to be a relatively small embezzlement scheme, Plaintiff necessarily knew or should have known of his subsequent misappropriation of trade secrets.   As with Defendants' arguments regarding RoyaltyStat's copyright infringement claims, this is a wholly non-sequitur proposition insofar as the two torts were neither directly related nor dependent upon one another.  Even if the sales commission was 30%, as wrongly claimed by Defendant, $287,000 as the supposed 30% sales commission is equivalent to $956,667 in subscription revenue, which RoyaltyStat never received.  But it has no bearing on the misappropriation of trade secrets nor would knowledge of one tort reasonably lead to an investigation into the possibility of the other tort.   While this large embezzlement is indicative of a pattern of deception and breach of trust, that creates an issue of fact to be explored in discovery.  But it does not lead to the conclusion that the trade secret claim is barred.

Admittedly, Plaintiff knew or could have established to a reasonable degree of certainty that Defendant Pacheco had downloaded some amount of data from Plaintiff's servers prior to his discharge for embezzlement.  Because he did so during a time when he was still employed by Plaintiff, though, it had no reason to know that he intended to utilize the data he procured for an improper purpose.  There was, moreover, no reason to suspect that Defendant Pacheco intended to usurp RoyaltyStat's customer list and list of agreements chosen for inclusion in the RoyaltyStat database, both of which are trade secrets.   Indeed, it was not until Defendant Pacheco used Plaintiff's trade secrets for the purposes of self-enrichment by selling subscriptions to the database he set up using RoyaltyStat's own database that the appropriation became a wrongful one.  *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1430

(7th Cir. 1994) ("At least in the commercial setting at issue here, suspicion and fear are not sufficient predicates for launching a lawsuit, and to file an action with no other basis would offend norms articulated in rules like Federal Rule of Civil Procedure 11… Seeing [the defendant producing a similar product] surely led Sokol to be concerned that its trade secrets were going to be misappropriated. But … these apprehensions were still just concerns and suspicions rather than *knowledge* of misuse.") (emphasis in original).

Defendants attempt to distinguish *Sokol* because it relied upon Wisconsin state law, which they say is unique inasmuch as it has a "use-based trigger." Def. Mem. at 25. They are simply wrong. Md. Comm. Law § 11-201(c)(2) defines misappropriation as being the

> Disclosure **or use** of a trade secret of another without express or implied consent by a person who:
>
> (i)    Used improper means to acquire the knowledge of the trade secret; or
> (ii)   At the time of disclosure **or use**, knew or had reason to know that the person's knowledge of the trade secret was:
> 1.   Derived from or through a person who had utilized improper means to acquire it;
> 2.   Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its **use**; or
> 3.   Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its **use**…

This language establishes precisely the type of "use-based" trigger that Defendants claim to be a distinction. *Sokol*'s analysis is thus solid, on point and persuasive. Defendants' argument is simply unavailing and should be disregarded.

### b.  Plaintiff's Separate Claims Against IntangibleSpring Are Timely

The Fourth Circuit confronted circumstances similar to those in the case at bar in *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411 (1999). In *Hoechst*, the defendants sought dismissal of a trade secrets law suit alleging, *inter alia*, the claims were not timely under the applicable statute of limitations. *Id.* at 419. In that case, a former employee misappropriated

Hoechst's trade secrets in contravention of his confidentiality agreement. *Id.* at 420. The former employee subsequently sold the trade secrets at issue to Nan Ya. *Id.* Nan Ya argued that the relevant misappropriation was that of the former employee and that, because Hoechst was aware of that misappropriation, the three-year limitations period ran from the date of the former employee's original misappropriation. *Id.*

The Fourth Circuit rejected Nan Ya's argument finding that "Hoecht's awareness of Nan Ya's alleged misappropriation, not [the former employee's] misappropriation, triggered the limitations period." *Id.* The court then found that "Nan Ya's own receipt and use of the In-Line Technology would constitute a separate, actionable injury, thus would trigger an independent, three-year limitations period when Hoechst 'knew or had reason to know' of this transaction." *Id.* at 421.

Defendants again offer a flawed basis to distinguish this case law when they assert that this is a "continuing misappropriation." Def. Mem. at 25. First, there is no precedent for finding that a misuse by a wholly distinct corporate entity constitutes a continuing misappropriation. Second, this ignores the above analysis demonstrating that § 11-201(c)(ii)'s use-based trigger is the proper date for this Court to use to analyze the issue. A similar result to that of *Nan Ya* should obtain here. Should the Court find that Pacheco's misappropriation occurred prior to December 23, 2012, that fact does not bar Plaintiff's action against IntangibleSpring, which did not even exist as of that date. Moreover, until IntangibleSpring set up its website and started selling the wrongfully purloined database based on RoyaltyStat's customer list, Plaintiff had no way to know of its misappropriation of Plaintiff's trade secrets.

## **CONCLUSION**

For the foregoing reasons, Defendants' partial motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6) must be denied in its entirety.


Dated: May 23, 2017                    Respectfully Submitted,


                                       _____/s/_Billy B. Ruhling, II_____
                                       Billy B. Ruhling, II (Fed. Bar No. 17827)
                                       Cecil E. Key (*Pro Hac Vice*)
                                       DiMuroGinsberg, P.C.
                                       1101 King Street, Suite 610
                                       Alexandria, VA 22314
                                       Tel: 703-684-4333
                                       Fax: 703-548-3181
                                       bruhling@dimuro.com
                                       *Counsel for RoyaltyStat LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2017, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will automatically serve the following counsel of record:

John Di Giacomo
Revision Legal, PLLC
Attorneys for Plaintiff
109 E. Front St. Ste. 309
Traverse City, MI 49684
eric@revisionlegal.com
john@revisionlegal.com


John Paul Lynch
McNamee Hosea Jernigan Kim Greenan and Lynch PA
6411 Ivy Lane, Suite 200
Greenbelt, MD  207770
Tel: 301-441-2420
Fax: 301-982-9450
jlynch@mhlawyers.com


*/s/ Billy B. Ruhling, II*
Billy B. Ruhling, II (Fed. Bar No. 17827)