IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROYALTYSTAT, LCC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 15-3940 |
| INTANGIBLESPRING CORP. *et al.*, | * | |
| | * | |
| Defendants. | ****** | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a partial Motion to Dismiss filed by Defendants Raul Pacheco Quintanilla and Defendant Institute for IntangibleSpring Corporation. The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. The Court GRANTS in part and DENIES in part the Defendants' motion.

**I.      BACKGROUND**

Plaintiff RoyaltyStat, LCC ("RoyaltyStat") is a limited liability company organized under the laws of the State of Maryland. RoyaltyStat provides its clients with a database of intellectual property royalty rates used for pricing and valuation in connection with litigation, corporate bankruptcy, business development, and mergers and acquisitions. ECF No. 1 at ¶ 5. On May 7, 2009, Plaintiff registered the text of the RoyaltyStat database, the "RoyaltyStat Royalty Tableau," with the United States Copyright Office, ECF No. 1 at Exhibit C. Plaintiff also currently seeks copyright registration in the "[s]election, coordination, and arrangement in material and data" and the "original text, material and data," for the 2015 RoyaltyStat Royalty Tableau, ECF No. 1 at Exhibit D.

Defendant Institute for IntangibleSpring Corp. ("IntangibleSpring") is a corporation organized under the laws of the Republic of Panama. Defendant Raul Pacheco Quintanilla ("Pacheco"), a resident of Mexico, previously worked as an independent contractor for RoyaltyStat and is a shareholder of IntangibleSpring. ECF No. 36. Pacheco was terminated for supposedly embezzling funds from Plaintiff. ECF No. 1 at ¶¶ 27 & 28. Plaintiff alleges that on three separate occasions in 2010 and 2011, prior to Pacheco's termination, Pacheco downloaded RoyaltyStat's customer list and proprietary data, and then formed a competitor business in August 2012, IntangibleSpring, and some time thereafter began using this information in violation of the Copyright Act, Lanham Act, Maryland Uniform Trade Secrets Act, and common law contract claims. *See generally* ECF No. 1. Plaintiff first learned of Defendants' use of Plaintiff's business information in April 2013, and filed this suit on December 23, 2015. *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is properly granted when the complaint fails to include sufficient factual allegations to render the plaintiff's claims facially plausible or permit reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A court may also grant a 12(b)(6) motion on statute of limitations grounds, but "only 'if the time bar is apparent on the face of the complaint.' " *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). In assessing the complaint, the Court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the favor of the plaintiff. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 1999).

Although the plaintiff's well-pleaded facts are afforded deference at this stage, the Court does not credit legal conclusions, even when the plaintiff purports them to be allegations of fact. *See Iqbal*, 556 U.S. at 678–79; *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). From the facts averred, the Court must be able to infer "more than the mere possibility of misconduct"; the complaint must contain factual pleadings that show the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 678), *aff'd* 659 F. App'x 744 (4th Cir. 2016).

The Court may properly take judicial notice of matters in documents attached to the complaint where incorporated and authentic. *See* Fed. R. Civ. P. 10(c); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006). Here, the Court will consider the 2009 copyright registration of Plaintiff's database, TX0007233781 (the "'781 Registration"), because this document is authentic, incorporated by the Complaint, and integral to both Plaintiff's claims and Defendants' proffered affirmative defenses.

### III. ANALYSIS

#### a. Count 1: Violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

The Copyright Act protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102. "This protection commences as soon as the original work is created and fixed in some tangible form . . . [and a] copyright owner may seek judicial enforcement of his property rights against subsequent infringers, so long as he has registered the work with the Copyright Office prior to filing the copyright infringement action." *Metropolitan Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc. ("MRIS")*, 722 F.3d 591, 596 (4th Cir. 2013). To state a prima facie case for copyright infringement, a plaintiff must allege facts establishing that (1) plaintiff owned copyrighted material and (2) the infringer copied protected

elements of that material. *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 143 (4th Cir. 2000); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (stating that "[t]o establish a claim for copyright infringement, a plaintiff must prove that it owned a valid copyright and that the defendant copied the original elements of that copyright.").

A copyright certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). A plaintiff may establish that defendant copied its protected material either directly or indirectly with proof that "the defendant had access to the plaintiff's work and produced a work that is substantially similar to the plaintiff's work." *M. Kramer Mfg. Co., Inc. v. Andrews,* 783 F.2d 421, 445 (4th Cir. 1986). Here, Plaintiff alleges that its database content is protected by a copyright, the '781 Registration, and that Pacheco's copying the contents into the IntangibleSpring database infringed upon the '781 Registration. 17 U.S.C. § 501; ECF No. 1. at ¶¶ 42–48. Thus, Plaintiff has stated a claim properly for copyright infringement.

Defendants raise three arguments in opposition. First, Defendants contend that because the RoyaltyStat database is no more than a "collection of facts obtained from SEC filings," the database lacks the requisite "originality" to be copyrightable under *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359–60 (1991). *See* ECF No. 49-1 at 8. Second, Defendants assert that because Plaintiff's copyright is for text only, Plaintiff may not claim copyright protection for the database itself. ECF No. 49-1 at 16. Third, Defendants argue that Plaintiff's claims are barred by the statute of limitations. *Id.* at 18–19. None defeat Plaintiff's claim.

First, contrary to Defendants' assertion that Plaintiff's database is not copyright eligible, the Complaint explains with particularity that although the database includes non-copyright eligible SEC content, that same content is also analyzed and copy-edited prior to publication on

the RoyaltyStat database. ECF No. 1 at ¶¶ 1, 11, 12, 17, 38, 45, 46. The Complaint further asserts that the RoyaltyStat database content includes unique descriptions of facts and technology original to RoyaltyStat. *Id.* at ¶¶ 1, 11–13, 38–39, 44. Where, as here, an author "clothes facts with an original collocation of words, he or she may be able to claim a copyright in this written expression." *Feist Publications,* 499 U.S. at 348; *see also Montgomery Cty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 810 (D. Md. 1995). Others may then copy the "underlying facts from the publication, but not the precise words used to present them." *Realty Photo Master*, 878 F. Supp. at 10 (quoting *Feist Publications*, 499 U.S. at 348). RoyaltyStat has thus pleaded with sufficient specificity that the copyrighted database includes its original work to survive dismissal at this stage. *See* ECF No. 1 at ¶¶ 1, 11–13, 38–39, 44.

As to the second argument, while Defendants correctly note that the '781 Registration solely asserts copyright in "text," *see* ECF No. 49-1 at 14–18,[1] Plaintiff has sufficiently pled that Defendants infringed upon the protected text of the RoyaltyStat database to survive a motion to dismiss. *See* ECF No. 1 at ¶ 38. Importantly, Plaintiff alleges that Defendants copied not only RoyaltyStat's selection, coordination, and arrangement of the material in the database, but also "content copied verbatim from RoyaltyStat." ECF No. 1 at ¶ 38. Therefore, the Complaint sufficiently establishes that Defendant infringed on the Plaintiff's copyright as to the text itself.

Finally, Plaintiff has properly pleaded its claims within the limitations period. A copyright infringement claim accrues when "one has knowledge of a violation or is chargeable with such knowledge." *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 202 (4th Cir. 1997) (internal citation omitted). Defendants contend that Plaintiff "knew or

---

[1] To claim copyright registration for the selection, coordination, and arrangement of material in a database, an author must use specific terms to accurately describe the copyrightable authorship, including "[c]ompilation of data," "[c]ompilation of database information," and/or "[c]ompilation and text." *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 727.3(D) (3d ed. 2017). It is evident from the face of the '781 Registration that the Plaintiff did not do so here. *See* ECF No. 1 at Exhibit C.

should have known that Defendant had copied the RoyaltyStat database in December 2010," requiring that Plaintiff bring its claims no later than 2013. ECF No. 49-1 at 18–19. Defendant bases its notice argument on Plaintiff's termination Pacheco in 2011 after he allegedly embezzled company funds in late 2009. Plaintiff's investigation of Pacheco's embezzlement, say Defendants, should have prompted an investigation of Pacheco's access to the RoyaltyStat database. *Id.* at 19. The Court disagrees. No factual averments suggest that Pacheco used the copyrighted material in an infringing manner until he copied the material into the IntangibleSpring database. ECF No. 1. at ¶¶ 45–46. Plaintiff first learned of IntangibleSpring's existence and the publication of copyrighted material in that database in April 2013, and then filed the Complaint on December 23, 2015. *See id.* at ¶¶ 33–35. Based on the facts included in the Complaint, therefore, Plaintiff's copyright infringement claim is not barred by limitations. *See* 17 U.S.C. § 507(b); *accord Semenova*, 845 F.3d at 567 (4th Cir. 2017) (noting that a court may grant a 12(b)(6) motion only if "the time bar is apparent on the face of the complaint.") (internal citation omitted). Defendants' Motion to Dismiss as to Count 1 is DENIED.

    a. **Count II: Violation of the Lanham Act, 15 U.S.C. § 1125(a)**

To state a claim for false advertising under the Lanham Act, a plaintiff must allege plausibly that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir.2011) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002)). With respect to the false or

misleading nature of the statement, the advertisement may be "literally false" or an "implied falsehood" that "tend [s] to mislead or confuse consumers." *Id.* (citations omitted). In the case of literal falsehoods, a claimant need not allege nor prove evidence of consumer deception; an implied falsehood, however, requires extrinsic evidence of confusion or deception. *Id*.

Plaintiff alleges that Defendants violated the Lanham Act by representing to former and current clients that the IntangibleSpring's database is similar to RoyaltyStat's "in content and quality, but is offered for a lower price" when Defendants could not and have not maintained "a database of similar quality" compared to RoyaltyStat. ECF No. 1. at ¶¶ 50–51. Plaintiff more particularly asserts that "Mr. Pacheco has contacted several of RoyaltyStat's customers and offered subscriptions of stolen data for about 1/3 of the RoyaltyStat regular subscription price," and that "[s]everal former RoyaltyStat customers who switched to IntangibleSpring . . . confirmed that they would not have switched except for the deception and significantly lower prices offered by Mr. Pacheco." *Id.* at ¶ 40.

Defendants primarily challenge this claim as insufficiently pled, in part because the claim is based on allegations supported on "information and belief." ECF No. 49-1 at 19–23. Putting to one side that the *Twombly* plausibility standard permits "pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession of the defendant," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), this claim fails for a different reason. Nowhere does Plaintiff aver that "the [D]efendant placed the false or misleading statement in interstate commerce." *See* ECF No. 49-1 at 23; *PBM Products,* 639 F.3d at 120. Rather, the Complaint asserts that Defendants bragged of its superior performance to some unidentified number of unnamed current and potential "clients" without any further facts supporting how such disclosures satisfy the commerce element. The Defendants' Motion to

Dismiss is therefore granted as to Count II without prejudice and with leave for Plaintiffs to amend and cure this pleading deficiency, if possible.

   b. **Count III: Misappropriation of trade secrets**

RoyaltyStat alleges that Defendants violated the Maryland Uniform Trade Secrets Act (MUTSA) by stealing its database content and customer list and using this information in the IntangibleSpring database. ECF No. 1 at ¶¶ 56-59. Md. Code Ann. Com. L. § 11–1201, *et seq.* (1989). To state a MUTSA claim, Plaintiff must plausibly allege that (1) the database and customer list are a trade secret and (2) Defendants misappropriated the trade secret. Md. Code Ann. Com. L. § 11–1201, *et seq.* (1989). Under MUTSA, a misappropriation occurs when a trade secret is:

> (1) Acquired by a person who knows or who has reason to know that the trade secret was acquired by improper means or
> (2) Disclosed by a person who used improper means to:
>    (a) Acquire knowledge of the trade secret; or
>    (b) At the time of the disclosure or use, the person had reason to know that their knowledge of the trade secret was:
>       (i) Derived from or through a person who had utilized improper means to acquire it;
>       (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>       (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain or limit its use; or
>    (c) Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Md. Code Ann. Com. L. § 11–1201. All MUTSA claims must be brought within three years from the time "the misappropriation is discovered or by exercise of reasonable diligence should have been discovered." Md. Code Ann. Com. L. § 11–206(a).

Defendants challenge the viability of Plaintiff's MUTSA claim solely on limitations grounds, arguing that Plaintiff, exercising reasonable diligence, would have discovered the misappropriation when Pacheco allegedly downloaded Plaintiff's database and "additional data" on December 1, 2010, December 14, 2010, and January 28, 2011, ECF No. 49-1 at 24–25; ECF No. 1 at ¶ 29–30. Once again, Defendants point to Plaintiff's investigation of Pacheco's 2009 embezzlement as somehow putting Plaintiff on notice as to his 2010 and 2011 database downloads. ECF No. 49-1 at 24–26. Even if Defendants are correct, Pacheco had not yet violated MUTSA at the time he *downloaded* the information because he still worked at RoyaltyStat and routinely used – and exported – this information as part of his employment. *See, e.g.,* ECF No. 49 at 4. It was only after Pacheco "published the same as if it was IntangibleSpring's own work product and in direct competition," ECF No. 1 at ¶ 58, that a "disclosure or use" occurred in violation of MUTSA. Md. Code Ann. Com. L. § 11–1201(2).

In this regard, *Sokol Crystal Products, Inc. v. DSC Commc'n Corp*, 15 F.3d 1427 (7th Cir. 1994) is persuasive. There, Defendant was accused of violating Wisconsin's version of the Uniform Trade Secrets Act, which prohibits "acquiring, disclosing or using . . . a trade secret of another." *Id.* at 1429. The United States Court of Appeals for the Seventh Circuit held that limitations did not begin to run when defendant initially obtained trade secrets lawfully, but rather when he later sold those secrets to a third party. *Id*. Similarly, Pacheco first acquired the alleged trade secrets lawfully while still employed by RoyaltyStat. *See* ECF No. 1 at ¶ 29 & 30; ECF No. 49-1 at 3–4. At that time, Pacheco had not yet misappropriated anything, and it was only after the information was used as part of the IntangibleSpring database that a MUTSA violation occurred.

Plaintiff further avers that it first discovered Intangible Spring's use of Plaintiff's trade secret information in April 2013, ECF No. 1 at ¶ 33, which triggered the three-year limitations period under Md. Code Ann. Com. L. § 11–206(a). Plaintiff thereafter filed suit in December 2015, well within the limitations period. Although formal discovery may unearth additional facts supporting that Defendants disclosed Plaintiff's trade secrets earlier than April 2013 and that Plaintiff could have learned about this use by exercising "reasonable diligence," no such facts exist at this juncture. *See* Md. Code Ann. Com. L. § 11–206(a); *Semenova*, 845 F.3d at 567 (reaffirming that "[a] court may grant a 12(b)(6) motion on statute of limitations grounds only if the time bar is apparent on the face of the complaint.") (internal citations omitted). Accordingly, Defendants' Motion to Dismiss as to Count III is denied.

IV.  **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss, ECF No. 47, is GRANTED in part and DENIED in part.

Accordingly, it is this 8th day of January, 2018, ORDERED:

1. That the Motion to Dismiss filed by Defendants INTANGIBLE SPRING, CORP. and RAUL PACHECO QUINTANILLA as to Count II, "False Advertising in Violation of the Lanham Act, 15 U.S.C. § 1125(a), BE, and hereby IS, GRANTED;

2. Count II of the Complaint filed by Plaintiff ROYALTYSTAT, LLC is DISMISSED without prejudice; Plaintiff shall have fourteen (14) days from the date of this Order to amend Count II consistent with this Opinion;

3. That the Motion to Dismiss filed by Defendants INTANGIBLE SPRING, CORP. and RAUL PACHECO QUINTANILLA as to Count I, "Violation of the Copyright Act, 17

U.S.C. § 101 *et seq.*, and Count III, "Violation of the Maryland Uniform Trade Secrets Act," BE, and hereby IS, DENIED; and

4. The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties.

| | |
|---|---|
| 1/10/2018 | /s/ |
| Date | Paula Xinis<br>United States District Judge |