# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROYALTYSTAT, LLC, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 8:15-cv-3940-PX |
| INTANGIBLESPRING, CORP., et al., | * | |
| Defendants | * | |

***

## MEMORANDUM OPINION

Pending before the Court is RoyaltyStat, LLC, ("RoyaltyStat") and Dr. Ednaldo Silva's motion to dismiss IntangibleSpring, Inc., ("IntangibleSpring") and Raul Pacheco Quintanilla's amended counterclaims. ECF No. 73. The motion is fully briefed, and a hearing was held on October 15, 2018. For the reasons that follow, the Court grants RoyaltyStat's motion to dismiss.[1]

### I.   BACKGROUND

RoyaltyStat is a limited liability company founded by Dr. Ednaldo Silva. ECF No. 112 ¶ 1. RoyaltyStat provides its clients with a database of intellectual property royalty rates used for pricing and valuation in connection with litigation, corporate bankruptcy, business development, and mergers and acquisitions. *Id.* ¶ 11. RoyaltyStat registered the text of the RoyaltyStat database with the United States Copyright Office ("781 Registration") and then registered the selection, coordination, and arrangement of data in 2015 ("811 Registration"). ECF No. 1 at 31.

In 2000, RoyaltyStat hired Raul Pacheco Quintanilla to work on the RoyaltyStat database. ECF No. 112 ¶ 24; ECF No. 72 ¶¶ 13–14. Although RoyaltyStat alleges that Pacheco was a mere data processor (ECF No. 76 at 6), Pacheco avers that he was the "primary creator and

---

[1] Because of the complex procedural posture of this case, the Court will refer to RoyaltyStat and Silva interchangeably, and IntangibleSpring and Pacheco interchangeably, unless otherwise noted.

curator" of the database until approximately 2004.  ECF No. 75 at 3.  Pacheco stopped working for RoyaltyStat entirely in 2011.  ECF No. 112 ¶ 28.  The next year, Pacheco founded IntangibleSpring, a direct competitor of RoyaltyStat.  *Id.* ¶ 32.

On December 23, 2015, RoyaltyStat filed its infringement action, alleging that IntangibleSpring's database includes records that Pacheco had impermissibly copied and stolen from RoyaltyStat's database.  ECF No. 1 ¶ 39.  After protracted litigation over the propriety of service, Pacheco accepted service through counsel on March 16, 2017.  ECF Nos. 47, 48.  Nearly a year later, IntangibleSpring filed counterclaims, asserting copyright infringement against RoyaltyStat for its use of Pacheco's database-related work (the "Pacheco Work") that he had performed while employed for RoyaltyStat.  ECF No. 72 ¶ 74–88.  The counterclaims also include companion state law claims of unfair competition and tortious interference with contractual and other business relationships.  *Id.* ¶¶ 89–116.

A month before filing the counterclaims, Pacheco applied on an expedited basis to the Copyright Office for registration of his contribution to the RoyaltyStat database.  ECF No. 72-2.  The Copyright Office refused Pacheco's registration on several grounds.  *Id.*  The Office explained that it "does not have an option for registration of a contribution, or multiple contributions, to an automated database."  ECF No. 72-2 at 3.  Nor could the work be registered as a contribution to a collective work, given that the Office could not discern from the application whether the RoyaltyStat database qualifies as a collective work.  *Id.*  Furthermore, as the Office explained, Pacheco submitted "three disassociated files that appear to be separate works."  *Id.*  Finally, the Office noted formal requirements that were not met, including the failure to include a descriptive statement.  *Id.*

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the well-pleaded allegations are accepted as true and viewed most favorably to the party pursuing the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). "[C]onclusory statements or 'a formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

As a preliminary matter, the Court must determine which version of the counterclaims is before the Court. RoyaltyStat argues that the amended counterclaims are not operative because Pacheco did not seek leave to amend his original counterclaims. However, leave of court was not necessary because under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f)." On March 9, 2018, RoyaltyStat moved to strike the original

counterclaims under Rule 12(f) and 12(b)(6). Pacheco, in response, filed the amended counterclaims on March 23, 2018, well within the twenty-one day period provided under the Rule. Accordingly, the Court will consider the sufficiency of the amended counterclaims.

**A. Right to Bring Suit under 17 U.S.C. § 411(a)**

RoyaltyStat principally argues that IntangibleSpring's infringement action must fail because its application to the Copyright Office was insufficient and thus rejected on formal grounds. 17 U.S.C. § 411(a) provides, in pertinent part, that:

> [N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights.

Based on this provision, RoyaltyStat contends that the rejection of IntangibleSpring's application on "formal" grounds acts to bar the suit. Put differently, because § 411(a) requires delivery of a deposit, application and fee, as well rejection of the same, deficiencies in the submission of the application alone preclude the claim. *See, e.g.*, *Tr. Safe. Pay, LLC v. Dynamic Diet, LLC*, No. 17-10166-MPK, 2018 WL 3614799, at *4 (D. Mass. July 27, 2018).

Although the argument has some persuasive appeal, it does not carry the day. The Copyright Office refused to register the Pacheco Work on "legal *and* formal grounds," and in so doing, reached the merits of the application itself. *See* 17 U.S.C. § 410 (emphasis added). The Copyright Office particularly noted that the application sought to register "a contribution" to a database, which the Office determined was not a category of copyrightable material. Further, the Copyright Office noted that the deposit copy consisted of "three dissociated files," which did not alone constitute material subject to copyright. In this regard, the Copyright Office reached and

4

refused the application on its merits. Where the Copyright Office refuses an application, an infringement claim shall lie. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165 (2010). However, even though the Court construes § 411(a) to confer on IntangibleSpring the *right* to bring this action, the claim nonetheless fails as a matter of law under a traditional 12(b)(6) analysis.

B. **Sufficiency of Infringement Counterclaim**

To state a claim for copyright infringement, the party must show that (1) the party owned the copyright to the disputed work, and (2) the opposing party copied protected elements of the work. *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 674 (D. Md. 2009). Valid copyright ownership is limited to that which is a "protectable expression." *Comins v. Discovery Commc'ns, Inc.*, 200 F. Supp. 2d 512, 518 (D. Md. 2002). Where a party has obtained copyright registration of the work, that party enjoys a rebuttable presumption of ownership as to copyrighted material. *Watkins v. Chesapeake Custom Homes, LLC*, 330 F. Supp. 2d 563, 571 (D. Md. 2004). However, where the Copyright Office refuses the application, the applicant bears the burden of demonstrating that the refused material is subject to copyright. *See CoStar Realty*, 612 F. Supp. 2d at 674.[2]

Material is subject to copyright generally when it is an original work of authorship. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). In the context of databases, the Copyright Office recognizes as copyrightable material the creation, selection, classification, and

---

[2] The Court recognizes that, effectively, it is reviewing the decision of the Copyright Office's refusal to register the Pacheco Work. In that respect, the Court acknowledges a lack of consensus as to the degree of deference accorded the Copyright Office's decision to refuse the application. *Darden v. Peters,* 488 F.3d 277, 286 (4th Cir. 2007); *Hayden v. Eagles Nest Outfitters, Inc.*, No. 1:17-CV-00209-MR, 2018 WL 3833504, at *4 (W.D.N.C. Aug. 13, 2018); *but cf.* 3 Nimmer on Copyright § 12.11 (2018) ("Given that the Copyright Office presumably possesses special expertise in evaluating the subject matter of copyright, it could be maintained that the issuance (or denial) of a registration certificate should be accorded deference when a court is charged with determining the copyrightability of a given item."). In this case, the matter is academic because even under a *de novo* standard more favorable to IntangibleSpring, the claim fails as a matter of law.

5

arrangement of data. *U.S. Copyright Office*, *Compendium of U.S. Copyright Office Practices* § 727.2 (3d ed. 2017).

In assessing whether IntangibleSpring has stated a cause of action, this Court considers not only the amended counterclaim, but the application before the Copyright Office because it is indeed integral to the claim itself. *Caner v. Autry*, 16 F. Supp. 3d 689, 700 (W.D. Va. 2014). Viewed most favorably to IntangibleSpring, the amended counterclaim and application fail to describe protectable expressions subject to copyright. ECF No. 72-2 at 2.

First, the claim fails as a matter of law because IntangibleSpring has not provided any plausible explanation for how its "contribution" to a database is a recognized category for which it may seek copyright protection. The Copyright Office, which acknowledged that the application sought to register a "contribution to a database," expressly noted that it "does not have an option for registration of a contribution, or multiple contributions, to an automated database." ECF No. 72-2 at 3. Nor can the Court discern a category that would permit review of a "contribution" to an automated database. *See* Registration of Claims to Copyright, 77 Fed. Reg. 37,605, 37,605–06 (June 22, 2012). Importantly, neither the Copyright Office nor this Court retains the authority to "create new categories of authorship." *See Compendium* (*Third*) § 313.3 (quoting Registration of Claims to Copyright, 77 Fed. Reg. at 37,607) (internal quotation marks omitted). Without more firm legal footing, this Court is unwilling to find that the Pacheco Work is protectable as a contribution to a database.

Alternatively, to the extent the Pacheco Work is construed as a contribution to a "collective work," the claim still fails because IntangibleSpring does not identify the larger work to which his portion is claimed to contribute. The Copyright Office noted that Pacheco's failure to submit the larger database for comparison doomed the application. ECF No. 72-2 at 3.

Likewise, without explanation from IntangibleSpring, this Court has no basis to determine how the submission is possibly a contribution to a larger database.

Indeed, unlike the Copyright Office, this Court has the benefit of comparing the RoyaltyStat submission which *was* approved, against the rejected IntangibleSpring submission. The Court notes that the two submissions bear very little resemblance to one another, including a lack of overlap in substantive data. RoyaltyStat's deposit copy[3] appears to be printed directly from the RoyaltyStat database, with the company logo clearly displayed. ECF No. 1 at 30–66. The RoyaltyStat submission includes printed results from various database searches, evidently to demonstrate how the query function retrieves information. *See Compendium* (*Third*) § 727.1. The submission also includes a copy of the page where a user may view all possible search fields. These pages clearly reflect the design, structure and functionality of the RoyaltyStat database, as well as the content which it has arranged, classified and made available to its users.

By contrast, IntangibleSpring's application, even when read with the amended counterclaim, does not allow this Court to infer plausibly that it constitutes copyrightable material. Although Pacheco baldly claims that he "submitted three spreadsheets consisting of 50 pages of records from each file," (ECF No. 75 at 13), the application's deposit copy actually consists of 78 pages total (including blank pages) submitted in no particular order and without any logical coherence. ECF No. 109-4; *cf. Compendium* (*Third*) § 1509.1(D)(2) (setting guidelines for submission of a deposit copy). The IntangibleSpring submission appears to be undated spreadsheets of data not otherwise identified or described. At the hearing, counsel for IntangibleSpring could shed no new light on the nature of the information included in the spreadsheets, the significance of the categories of information included in the spreadsheets, how

---

[3] A deposit copy is the "copy or copies of a work that are submitted to the U.S. Copyright Office," which enables the Office "to determine if the work is eligible for registration." *Compendium* (*Third*) § 204.3.

7

the spreadsheets were created, or the differences between each of the distinctive files. The only substantive information the Court discerned is that the spreadsheets are in Excel format. Nor could counsel explain what specifically Pacheco had authored in the spreadsheets. The confusing nature of the deposit copy and application undermines Pacheco's claim of copyright infringement.

The amended counterclaim does not supply the missing details. Pacheco alleges that he "created the initial database fields" and "identif[ied], extract[ed], and normalize[d] data." ECF No. 72 ¶ 20. But bare assertions without facts in support do not move the claim from possible to plausible. The conclusory description consists of little more than a re-characterization of the categories of authorship one could, as a matter of law, create in a database. *Compendium* (*Third*) § 727.2 (listing forms of authorship such as "choosing the material" and "classifying, categorizing, ordering, or grouping the material"). Accordingly, when viewing the amended counterclaim and the application in the light most favorable to IntangibleSpring, the claim fails for want of demonstrating that the material in question is copyrightable.

IntangibleSpring nonetheless attempts to save the counterclaim by arguing that the Court may consider RoyaltyStat's registered database as the copyrightable material to which Pacheco claims authorship. In support, Pacheco relies almost exclusively on *Tang v. Hwang*, 799 F. Supp. 499, 503–04 (E.D. Pa. 1992), for the proposition that "[t]here is no requirement under the statute that the only person who may bring an action is the person who applies for the copyright registration." *Id.* Thus, according to IntangibleSpring, the counterclaims to ownership of the RoyaltyStat database may lie, even though neither IntangibleSpring nor Pacheco actually applied for the RoyaltyStat registration. IntangibleSpring misreads *Tang*.

*Tang* was not the original copyright applicant for the disputed material, but was granted a

license giving him exclusive ownership to the copyright. Accordingly, *Tang* was the "the legal or the beneficial owner[] of a registered copyright" under 17 U.S.C. § 501(b) because such rights had been transferred to him by agreement. *See Telemax Entm't, Inc. v. Telemundo Network, Inc.*, No. 0 4-20150-CIV-GRAHAM, 2004 WL 3019373, at *2 (S.D. Fla. Dec. 16, 2004) (discussing *Tang*). Thus, the court expressly held that "[t]ransfer of exclusive rights, through a license for example, by the holder of a copyright entitles the licensee, to the extent of any particular exclusive right it acquired, to all of the protections and remedies accorded to a copyright owner by the Copyright Act." *Tang*, 799 F. Supp. at 502.

This is a far cry from the facts averred in the counterclaims. No facts as pleaded allow this Court to infer that Pacheco was granted any license or assignment to the RoyaltyStat database. Rather, it is undisputed that no agreement existed concerning ownership rights in the RoyaltyStat registration. ECF No. 72 ¶¶ 49–50; ECF No. 112 ¶ 31. The counterclaim under this theory of relief, therefore, must fail.

At the hearing, IntangibleSpring also attempted to argue that the infringement counterclaim may go forward under a work for hire theory. IntangibleSpring, more particularly, suggested that because Pacheco created the RoyaltyStat database as an independent contractor not on a work made for hire basis, Pacheco may now proceed on his infringement counterclaim on the same theory. *Cf. Billco Int'l, Inc. v. Charles Prods., Inc.*, 776 F. Supp. 2d 105, 113 (D. Md. 2011) (denying summary judgment on plaintiff's work for hire theory of authorship). Although Pacheco may pursue this contention as a defense to RoyaltyStat's infringement action against him, the Court is not persuaded that the work for hire theory supports an infringement counterclaim against RoyaltyStat. This is because IntangibleSpring's right to bring a counterclaim in the first instance is circumscribed by the requirements of 17 U.S.C. § 411(a).

9

Section 411(a) cabins this claim based on the scope of IntangibleSpring's application, which the Copyright Office refused. No authority, statutory or otherwise, permits IntangibleSpring to broaden the scope of the work in the infringement counterclaim beyond the work described in the application itself. But countenancing Pacheco's work for hire argument as the basis to assert his counterclaim would do just that.[4] Pacheco's argument is unavailing, and so the infringement counterclaim cannot survive as a matter of law.

As to the remaining state law claims, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). These claims are dismissed without prejudice in the event IntangibleSpring wishes to refile in state court.

### IV. CONCLUSION

For the foregoing reasons, the motion to dismiss the amended counterclaims (ECF No. 73) is granted. A separate order follows.

Dated: October 25, 2018                            ___/S/_____
                                                   Paula Xinis
                                                   United States District Judge

---

[4] Moreover, even if Pacheco could somehow pursue the counterclaims under this theory, he has not pleaded sufficient facts to survive dismissal. The parties acknowledge that the work for hire inquiry is fact intensive, focusing on the work performed and the relationship between the parties. Simply labeling himself as an "independent contractor" (ECF No. 72 ¶ 13), without factual support, cannot survive challenge. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (listing factors for determining whether hired party is employee or independent contractor).