# EXHIBIT K



444 Cass Street, STE D, Traverse City, MI  49684
855.473.8474  /  revisionlegal.com

August 13, 2018

Cecil Key
Bill Ruhling
1101 King St., Suite 610
Alexandria, VA 22314

RE:   Objections to IntangibleSpring's Subpoena to IP Performance Group, Inc.

Dear Bill and Cecil:

  This letter is in response to IP Performance Group's objections to IntangibleSpring's subpoena. IP Performance Groups' response to IntangibleSpring's subpoena makes several objections: (1) that the subpoena seeks the opinion or knowledge of an expert retained for trial preparation; (2) that the subpoena is vague and ambiguous; (3) that the scope of the information requested is overbroad; and (4) that the request is unduly burdensome. Since these same objections have been lodged for all requests contained within Defendants' subpoena, they will be addressed without reference to the specific requests contained therein.

  First, IP Performance Group objects to IntangibleSpring's subpoena on the basis that the subpoena seeks the knowledge of an expert retained for trial preparation pursuant to Fed. R. Civ. P. 26(b)(4)(D). In reviewing whether an individual falls under this section, courts have developed four factors to consider: (1) the manner in which the consultation was initiated; (2) the nature, type, and extent of information or material provided to, or determine by the expert in connection with his review; (3) the duration and intensity of the consultative relationship; and, (4) the terms of the consultation, if any, such as payment, confidentiality of test data or opinions, etc. *Ngo v. Standard Tools & Equip., Co.*, 197 F.R.D. 263, 266 (D. Md. 2000). As a threshold matter, however, an individual must be considered an expert to trigger the application of Fed. R. Civ. P. 26(b)(4)(D).

  It is clear that IP Performance Group is not an expert and was not retained by RoyaltyStat to perform consulting expert services. IP Performance Group's website does not list consulting expert services. Instead, it lists IP Organization Improvement,

Inventor Rewards Program Framework, Intellectual Property Strategy & Metrics, IP Software Evaluation & Selection, Portfolio Classification, and IP Process under its "Services" tab:



On June 19, 2015, RoyaltyStat signed an engagement letter with IP Performance Group for "Intellectual Property Management Advisory Services." The purpose of this engagement is described as "to assist RoyaltyStat evalue competitive offerings and assess their systems functionality and usability against user and market needs."

> The purpose of this engagement is for ipPerformance to assist RoyaltyStat evaluate competitive offerings and assess their systems functionality and usability against user and market needs. The engagement will be tailored as the project unfolds based on our ongoing discussions with you and your colleagues and the specific information presented to us.

Instead of an engagement in advance of litigation, this engagement makes clear that RoyaltyStat hired IP Performance Group to perform a competitive analysis not only on IntangibleSpring, but also on KTMine, another competitor. Consequently, it is clear that IP Performance Group has not been hired as a consulting expert in this case.

Even ignoring the engagement letter, IP Performance Group's actions make clear that it is not acting as a consulting expert. In order to meet the definition of an expert, which is defined as "'one who can see all sides of a subject,'" an expert must "owe his allegiance to his calling and not to the party employing him" and "be in a position to testify as an expert and not as a partisan." *Virginia Elec. & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 406 (E.D. Va. 1975). To meet the definition of an expert under Rule 26, the party must be "specifically employed," that is, "put on the payroll for the specific purpose of deriving facts and opinions for use in trial preparation or anticipated litigation." *Id.* at 407.

But IP Performance Group is neither an expert or specifically employed for the purposes of litigation. As you know, Rob Williamson and Greg Weinstock contacted

IntangibleSpring in August of 2015 and falsely represented that IP Performance Group was interested in purchasing access to the IntangibleSpring database. Mr. Williamson and Mr. Weinstock were provided with access to the IntangibleSpring database, accepted the IntangibleSpring End User License Agreement, and performed approximately 500 searches of that database. Mr. Williamson and Mr. Weinstock both represented that they were interested in paying for access, but never followed through with payment. It is now clear, based on the documents that you have produced in discovery, that Mr. Williamson and Mr. Weinstock deceived Mr. Pacheco into providing them with access to the IntangibleSpring database and then mined that database and exported information in violation of the IntangibleSpring End User License agreement. And then it did the same to competitor KTMine, also in violation of that company's end user license agreement. These actions are not those of a consulting expert, they are those of a so-called "competitive intelligence" firm. Thus, it is abundantly clear that IP Performance Group does not qualify for the protection of Fed. R. Civ. P. 26(b)(4)(D) and, therefore, must produce in response to Defendants' subpoena.

Second, IP Performance Group argues that Defendants' subpoena is vague and ambiguous. Specifically, IP Performance Group objects in the following manner:

1. Please produce any and all Documents and Communications between IP Performance and Ednaldo Silva Concerning the IntangibleSpring Database from January 1, 2015 to the present;
   a. IP Performance Group objects to the use of "Concerning the IntangibleSpring Database" as vague and ambiguous.
   b. Concerning is defined as "related to, referring to, describing, constituting, evidencing, or pertaining to," while IntangibleSpring Database is defined as "the database maintained by IntangibleSpring Corp. containing royalty rates extracted from license agreements."
   c. This request very clearly seeks any documents and communications between IP Performance Group and Ednaldo Silva wherein they discuss the IntangibleSpring database and is limited in scope to the time period in which IP Performance Group accessed the IntangibleSpring database, downloaded content from it, and provided that content to RoyaltyStat.
2. Please produce any and all Documents and Communications between IP Performance and RoyaltyStat concerning the IntangibleSpring Database from January 1, 2015 to the present.

   a. IP Performance Group objects to the use of "Concerning the IntangibleSpring Database" as vague and ambiguous.
   b. Concerning is defined as "related to, referring to, describing, constituting, evidencing, or pertaining to," while IntangibleSpring Database is defined as "the database maintained by IntangibleSpring Corp. containing royalty rates extracted from license agreements."
   c. This request very clearly seeks any documents and communications between IP Performance Group and RoyaltyStat wherein they discuss the IntangibleSpring database and is limited in scope to the time period in which IP Performance Group accessed the IntangibleSpring database, downloaded content from it, and provided that content to RoyaltyStat.
3. Please produce any and all Documents and Communications between IP Performance and Ednaldo Silva Concerning the RoyaltyStat Database from January 1, 2015 to the present;
   a. IP Performance Group objects to the use of "Concerning the RoyaltyStat Database" as vague and ambiguous.
   b. Concerning is defined as "related to, referring to, describing, constituting, evidencing, or pertaining to," while RoyaltyStat Database is defined as "the database maintained by RoyaltyStat, LLC containing royalty rates extracted from unredacted license agreements."
   c. This request very clearly seeks any documents and communications between IP Performance Group and Ednaldo Silva wherein they discuss the RoyaltyStat database and is limited in scope to the time period in which IP Performance Group accessed the IntangibleSpring database, downloaded content from it, and provided that content to RoyaltyStat.
4. Please produce any and all Documents and Communications between IP Performance and RoyaltyStat Concerning the RoyaltyStat Database from January 1, 2015 to the present
   a. IP Performance Group objects to the use of "Concerning the RoyaltyStat Database" as vague and ambiguous.
   b. Concerning is defined as "related to, referring to, describing, constituting, evidencing, or pertaining to," while RoyaltyStat Database is defined as "the database maintained by RoyaltyStat, LLC containing royalty rates extracted from unredacted license agreements."

   c. This request very clearly seeks any documents and communications between IP Performance Group and RoyaltyStat wherein they discuss the RoyaltyStat database and is limited in scope to the time period in which IP Performance Group accessed the IntangibleSpring database, downloaded content from it, and provided that content to RoyaltyStat.
5. Please produce all Documents downloaded by IP Performance from the IntangibleSpring Database from January 1, 2015 to the present.
   a. IP Performance Group objects to the use of "downloaded from the IntangibleSpring Database" as vague and ambiguous.
   b. IntangibleSpring Database is defined as "the database maintained by IntangibleSpring Corp. containing royalty rates extracted from license agreements."
   c. This request very clearly seeks the content that was improperly downloaded by IP Performance Group from the IntangibleSpring database and provided to RoyaltyStat and is limited in scope to the time period in which IP Performance Group accessed the IntangibleSpring database, downloaded content from it, and provided that content to RoyaltyStat.
6. Please produce all Documents evidencing retainer agreements or contracts between IP Performance and RoyaltyStat or Ednaldo Silva from January 1, 2015 to the present.
   a. IP Performance Group objects to the use of "evidencing retainer agreements or contracts" as vague and ambiguous.
   b. This request speaks for itself. It properly requests all copies of retainer agreements.
7. Please produce all Documents evidencing payments by RoyaltyStat or Ednaldo Silva to IP Performance from January 1, 2015 to the present.
   a. IP Performance Group objects to the use of "evidencing payments" as vague and ambiguous.
   b. This request speaks for itself. It properly requests the amount and dates of payments made by RoyaltyStat or Ednaldo Silva to IP Performance Group during this dispute.
8. Please produce all Documents evidencing any reports provided by IP Performance to RoyaltyStat or Ednaldo Silva from January 1, 2015 to the present.
   a. IP Performance Group objects to the use of "evidencing any reports" as vague and ambigious.

      b. This request speaks for itself. It properly requests the reports provided by IP Performance Group to RoyaltyStat or Ednaldo Silva during the time period of this dispute.

These objections are without merit and Defendants reiterate their demand that IP Performance Group produce in response to Defendants' subpoena.

      Third, IP Performance Group objects that Defendants' requests are overbroad. These objections are similarly without merit. Defendants' requests seek production from one year prior to the filing of this lawsuit, during the time period in which IP Performance Group deceived IntangibleSpring into providing it with access to its database, until the present. This is a relevant time period and the discovery sought is proportional, reasonable, and relevant because the search results produced by IP Performance Group tend to show whether RoyaltyStat's claim, that IntangibleSpring stole its database from RoyaltyStat, is factually correct.

      Fourth, IP Performance Group objects that the discovery sought is unduly burdensome without providing any facts to support this objection. Please provide, no later than Wednesday, August 15, 2018, specific facts explaining: (1) the volume of production, including in number of pages and file size; (2) the process needed to undertake this production, including an estimate of the number of employee hours; and (3) the cost to IP Performance Group to produce; and (4) the format in which any electronic records to be produced are stored. Once our client has this information, it can properly evaluate IP Performance Group's request for payment in exchange for production.

      Finally, we have a meet and confer scheduled on these issues for tomorrow, August 13, 2018. Please note that, due to the rapidly approaching close of discovery, if these issues cannot be resolved in our meet and confer, Defendants will proceed with filing a motion to compel IP Performance Group's response to Defendants' subpoena.

      Sincerely,

      John Di Giacomo