IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | | |
|---|---|---|
| RoyaltyStat LLC, | | |
|     Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 8:15-cv-03940-GJH |
| | * | |
| IntangibleSpring Corp., | * | |
| | * | |
| and | * | |
| | * | Hon. George J. Hazel |
| Raul Pacheco Quintanilla, | * | |
| | * | |
|     Defendants. | * | |

---

**OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE EXPERT OPINION OF JOHN FENDRICK**

Plaintiff RoyaltyStat LLC ("RoyaltyStat") hereby responds to Defendants IntangibleSpring, Corp. ("IntangibleSpring") and Raul Pacheco Quintanilla's ("Pacheco") (collectively, "Defendants") Motion to Exclude Expert Opinion of John Fendrick ("Motion").

**Introduction**

This case centers around the misappropriation by Defendants of RoyaltyStat's intellectual property in its subscription-based online database of intangible asset royalty rates by Defendants, which Defendants then used to build and offer a competing subscription-based database. Each database consists of thousands of records that must be compared for presentation at trial as to content, selection, coordination and arrangement. This is a complex process that cannot be done on-the-fly. In addition, neither party was willing to allow its opponent to see its database. Review therefore had to be conducted by

a third party.

John Fendrick, RoyaltyStat's expert, has over thirty years of experience in database design and construction. He has the knowledge and expertise to conduct the review that this case requires and to synopsize it for the jury's consideration.

Defendants take the position that Mr. Fendrick should be excluded because he does not have an advanced degree, he has not testified before as an expert, he performed a linguistics analysis even though he has no formal training in linguistics, and he allegedly violated the "clean room" procedures for review of the databases. But Defendants' expert, Mr. Haggerty, also has no advanced degree, has not previously testified as an expert, performed linguistics analysis even though he too has no formal training in linguistics, and he removed data from the "clean room" on several occasions in violation of the agreed procedures. Defendants cannot credibly represent that under these circumstances, Mr. Fendrick must be disqualified while Mr. Haggerty is not.

Mr. Fendrick's methodology, which he employed based on his decades of experience, was also emulated by Mr. Haggerty. Both wrote custom scripts and used SQL technology to perform their comparison, compared fields and field titles, performed linguistic analysis of language in description fields, and looked for evidence of inclusion of documents obtained through FOIA requests. Mr. Haggerty had no criticism of Mr. Fendrick's methodology. These facts demonstrate the reliability of Mr. Fendrick's methodology.

Defendants also miss the point in their attempt to diminish the significance of the similarities in the two databases that Mr. Fendrick identified, even going so far as to argue that Mr. Fendrick's opinions should be excluded because he "ignored" differences in the

databases. RoyaltyStat will present evidence of verbatim copying by Defendants, including testimony of Pacheco himself. Mr. Fendrick's analysis not only confirms verbatim copying, but demonstrates other evidence of copying and continued propagation in Defendants' database, such as misspelled words and other typographical errors, that should not be in Defendants' database at all if it was truly independently created. Ultimately, Defendants' criticisms are legally irrelevant: "no plagiarist can excuse the wrong by showing how much of his work he did not pirate." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936).

In tacit recognition of the futility of these positions, Defendants have therefore presented a tangled assortment of unsupported allegations that have nothing to do with Mr. Fendrick's qualifications or his methodology. In doing so, Defendants have continued their vexing pattern of dribbling out documents that should have been—but were not—produced years ago, and blatantly distorting the documents they did produce, all to support inflammatory and outrageous allegations. RoyaltyStat respectfully requests that Defendants' blatant misconduct not be countenanced for this motion or any other purpose.

In sum, Mr. Fendrick is well qualified, he has employed an established methodology, and he has considered sufficient facts and data to support his opinions. Defendants may disagree with his conclusions and argue, as they do in their motion, that there are other facts to be considered. But that is for cross-examination at trial. For admissibility, Mr. Fendrick has easily met the established requirements for the opinions he is designated to offer, which are both reliable and relevant, and will assist the trier of fact. *See United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 592 (1993).

**Legal standard**

The district court enjoys "broad latitude" in determining the reliability and admissibility of expert testimony, and its determination receives considerable deference. *Kumho Tire Co.*, 526 U.S. at 142, 119 S.Ct. 1167 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)); *see also Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). In assessing admissibility of expert testimony, courts apply the framework prescribed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under that framework, expert testimony is admissible if it is "reliable" and "relevant," in that it will assist the trier of fact in determining a fact at issue. *See United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000).

Expert testimony is relevant where it is "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute." *Casey v. Geek Squad® Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 341 (D. Md. 2011) (citing *Daubert*, 509 U.S. at 591)). Expert testimony "is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Thus, "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986).

These tests are met where: (1) the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion; and (2) the expert's opinion is "based on sufficient facts or data" and "the product of reliable principles and methods" that

the expert "reliably applie[s] ... to the facts of the case." Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592-93. Thus, expert testimony is admissible if it is (1) based on sound factual predicates and (2) helpful to the trier of fact. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). As explained further below, Mr. Fendrick's proffered testimony easily satisfies these standards.

## Argument

**A.    Mr. Fendrick is a qualified expert in database creation, use, and maintenance.**

Defendants attack Mr. Fendrick's supposed lack of qualifications, but the level of skill or experience needed to qualify as an expert is not as exacting as Defendants claim. The Fourth Circuit has held that "[t]he witness' qualifications to render an expert opinion are . . . liberally judged by Rule 702." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). "Inasmuch as [Rule 702] uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." *Id.*

> Where the expert's qualifications are challenged, 'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered. One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion.'

*Id.* (quoting *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989)).

Here, Mr. Fendrick's opinion relies on his 30 years of experience developing database architectures and applications solutions. His experience is in database design and construction. *See* Declaration of John Fendrick Regarding RoyaltyStat LLC's Opposition to Motion In Limine to Exclude Expert Opinion ("Fendrick Decl."), attached as **Ex. A,** at ¶¶ 1-8; Expert Declaration of John Fendrick ("Fendrick Expert Declaration") Dkt. 135-17

5

at 2. Reviewing and comparing two different databases as to structure and content requires precisely that type of specialized knowledge and skill. For example, both databases were hosted on a SQL server. To perform a search, a user would have to know how SQL works and how to write scripts to perform searches.

In an attempt to disqualify Mr. Fendrick, Defendants entirely misstate his experience, knowledge, training, and skill. *See* **Ex. A,** Fendrick Decl. at ¶¶ 4-8. In doing so, they incorrectly portray his work experience as "centered on sales and database management." Dkt. 171 at 8. They further portray his skills and ability as "building or designing a new web application or website, which [Defendant's contend] is the knowledge within Mr. Fendrick's experience and education." Dkt. 171 at 10. This is patently incorrect. Mr. Fendrick's career focus is and has been on the design and construction of databases, the very topic at issue here. *See* **Ex. A,** Fendrick Decl. at ¶¶ 4-8.

Additionally, Mr. Fendrick has qualifications on par with and arguably more directly related to the issues at hand, than Defendants' expert. Neither possesses an advanced degree (*see* **Ex. B,** Hagerty CV at 1) (stating he received a B.S. in Computer Information Systems (Computer Forensics Management) from Strayer University in 2016) and neither has testified as an expert before (*see* Hagerty Report at 30) (stating he has never given expert testimony in a deposition or at trial). Mr. Fendrick similarly received a B.S. in Computer Systems Engineering from Rensselaer Polytechnic Institute; however, he completed his degree in 1986 (*see* Dkt. 135-17, Fendrick Declaration at 2), 30 years before Defendants' expert and therefore has *30 more years* of relevant experience practicing in the field than Defendants' expert.

Defendants also attempt to disqualify Mr. Fendrick from testifying because he is

not an expert specifically in the fields of licensing, linguistics, or statistics. *See* Dkt. 171 at 9-10. This argument is irrelevant because Rule 702 does not "create[ ] a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts. . . . [Rather] the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151–52, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Here, the "special training in statistics" or "training or formal education in linguistics" that Defendants demand are not necessary to or even preferable for an expert identifying the prevalence of certain categories of matching selection, coordination and arrangement of data between two databases using SQL scripts to perform searches and compare data and opining on whether the amount, type, and location of these matches implies that Defendants copied RoyaltyStat's database. Dkt. 171 at 9-10. And the licensing expertise that Defendants demand would not even be useful for opining on layout and organization common to the two databases for purposes of an infringement analysis. Dkt. 171 at 9. Moreover, Defendants' expert, Mr. Haggerty, also performed a linguistics analysis even though he has no background or education in linguistics. *See* Investigation Report of Frederick Haggerty ("Haggerty Report"), Dkt. 125-52 at 24-26. While Mr. Fendrick is eminently qualified, even if he were not, a "lack of direct experience is not a sufficient basis to reject [a proposed expert's] testimony, but may affect the weight that testimony is given, a decision properly made by the [finder of fact]." *Martin v. Fleissner GMBH*, 741 F.2d 61, 64 (4th Cir. 1984). "[T]he fit between an expert's specialized knowledge and experience does not need to be exact." *Parker v. Allentown, Inc.*, 891 F. Supp. 2d 773, 785 (D. Md. 2012); *Anderson v. Home Depot U.S.A., Inc.*, No.

7

GJH-14-2615, 2017 WL 2189508, at *4 (D. Md. May 16, 2017).

Finally, in attacking Mr. Fendrick's qualification, Defendants improperly focus on their disagreements with his conclusions. "The [reliability] inquiry is a flexible one, and its focus must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 580. Simply disagreeing with an expert's conclusion is not a basis for disqualification; however, this is the focus of Defendants' attack. For example, they have at least three pages of alleged contrary evidence. *See* Dkt. 171 at 7-9. This "evidence" is replete with the types of evidentiary issues noted in Section B below. In attacking his qualifications, Defendants also argue that Mr. Fendrick's testimony is "based on a process … that could just as easily be formed by a lay juryperson at trial." Dkt. 171 at 6, 10. That has nothing to do with qualifications. And as discussed in Sections C and D, Mr. Fendrick's specialized skill and testimony will aid the jury and his principles and methodology are sound and appropriate for the issues raised in this case.

**B.     Defendants' motion is predicated on evidence to be elicited at trial, that does not support the proposition, or that must be excluded because it was not produced in discovery.**

**1.     Defendants' argument is contingent on testimony to be presented at trial and therefore is not ripe for resolution prior to trial.**

Much of Defendants' motion is dependent on declaration testimony of Pacheco who is expected to be a witness at trial. It would therefore be improper to exclude Mr. Fendrick's testimony based on this declaration until Plaintiff has an opportunity to fully explore Pacheco's testimony at trial. Fed. R. Evid. 104(b).

**2.     Defendants' argument is either not supported by the documents or many of the documents were never produced in discovery and therefore cannot be relied upon now.**

Most of the exhibits Defendants use as factual refutation either were not produced

8

in discovery, and therefore cannot be relied upon now, or they do not actually support the proposition for which Defendants proffer them.  For example:

- Defendants argue that Mr. Fendrick's qualifications are somehow deficient because he "does not write code." Dkt. 171 at 8.  But, as Defendants' own submission shows, Mr. Fendrick continues to write SQL queries and SQL is a programming language. *Id*., Ex. A at 27:11-22.

- Defendants assert that Pacheco made changes to the IntangibleSpring database based on a request from RoyaltyStat's counsel based on a request from Mr. Fendrick. Dkt. 171 at 12.  But, as the document Defendants used to support this allegation shows, the only request was to include information that was *expected* to be found in the infringing database.  There was no request to change or alter anything.  *Id*., Ex. I.

- Defendants now seek to introduce evidence regarding third parties, ktMine and Invotex, that they never produced in discovery and that their expert did not consider in his analysis. Dkt. 171 at 9, Ex. F, G.  Neither expert has considered this information and it is being put forward over a year and a half too late.

- Defendants assert that Mr. Fendrick was "paid and supervised by RoyaltyStat and its owner Ednaldo Silva" for fourteen years, citing as evidence that "Mr. Fendrick's wife worked for RoyaltyStat." Dkt. 171 at 17.  Defendants know, however, that Mr. Fendrick never worked for RoyaltyStat, that his company, Woodbourne Solutions, ceased working for RoyaltyStat at least seven years ago, and that the work of Mr. Fendrick's wife was limited to reviewing a small number of agreements under the supervision of Mr. Fendrick, not Pacheco.  Expert Declaration of John Fendrick, Dkt. 135-17 at 4; **Ex. A,** Fendrick Decl. at ¶¶ 11-12.

- Defendants point to Exhibit S as evidence that Silva told Mr. Fendrick to help "spy" on a competitor.  Dkt. 171 at 21; Ex. S.  But Mr. Fendrick is not even listed on that email thread and his name does not even appear anywhere on the document.  *Id.*, Ex. S.

- Defendants' Exhibit S is also among the documents that were not produced in discovery and that Defendants cannot be permitted to rely on it now.

Thus, to the extent any of this information is at all relevant under *Daubert*, these evidentiary issues are fatal to Defendants' motion.

**C.     Mr. Fendrick's expert testimony is relevant and will help the jury understand the evidence and aid the jury in determining facts in dispute.**

Expert testimony "is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993); *Anderson v. Home Depot U.S.A., Inc.*, No. GJH-14-2615, 2017 WL 2189508, at *4 (D. Md. May 16, 2017).  "The subject matter of Rule 702 testimony need not be arcane or even especially difficult to comprehend.  If, again in the disjunctive, the proposed testimony will recount or employ 'scientific, technical, or other specialized knowledge,' it is a proper subject. There is no gap between the 'specialized knowledge' that is admissible under the rule and the 'common knowledge' that is not.  The boundary between the two is defined by helpfulness."   *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). Here, Defendants argue that Mr. Fendrick's testimony is "based on a process … that could just as easily be formed by a lay juryperson at trial."  Dkt. 171 at 6, 10.  However, Mr. Fendrick wrote specialized SQL scripts to analyze the databases and analyzed the issue of the "primary key" for each database.  *See* **Ex. C**, Expert Deposition of John Fendrick (Jan. 15, 2019) at 37:17-48:12; Dkt. 135-17 (Fendrick Expert Declaration) at 9-13.  The average

juror cannot be expected to have the skill required to conduct such analysis let alone be required to do so at trial. Without Mr. Fendrick's testimony the jury could not possibly compare the two databases and reach a conclusion on what any identified similarities might signify within the database and within the field of royalty rates.

### D. Mr. Fendrick considered sufficient facts and data to support his opinions and employed an appropriate methodology.

Mr. Fendrick based his opinion on a thorough review of all the relevant facts, data, and testimony including:

- The Amended Complaint filed by RoyaltyStat in this matter, together with the exhibits attached thereto;

- The deposition testimony of Raul Pacheco;

- The deposition testimony of IntangibleSpring;

- The RoyaltyStat database as provided and made available at Sensei Technologies (RoyaltyStat Tableau on Jan 31 2011 (Discovery Exhibit) Final.xlsx);

- The IntangibleSpring database provided and made available at Sensei Technologies (IntangibleSpring Database.csv);

- A mapping of RoyaltyStat AutoIDs to the exhibit numbers in the RoyaltyStat database; and

- A copy of the RoyaltyStat source documents corresponding to the records in the spreadsheet provided.

*See* Fendrick Expert Report at 3. This is actually more information than was considered by Defendants' expert, Mr. Haggerty. Dkt. 125-52 (Haggerty Report) at 2. Defendants nevertheless take the position that Mr. Fendrick's testimony is not based on sufficient facts or data. Regardless, Defendants' position relies heavily on Pacheco's declaration, and therefore it is an issue for trial. (*See* Section B above).

Furthermore, the factual basis of the arguments Defendants raise in support are

11

substantially incorrect or otherwise unreliable and unsupported. For instance:

- The supposed "error rate" found by Defendants' expert Haggerty (*see* Dkt. 171. at 11-12) is not in his report. *See* Dkt. 125-52 (Haggerty Report). This argument is unsupported and therefore unreliable and cannot be a basis to find Mr. Fendrick's testimony unreliable.

- As noted above, no one ever asked Pacheco to alter IntangibleSpring's database. The only request was that Defendants include for inspection information Mr. Fendrick expected to see for records in a database (*e.g.*, an AutoID number). *See* Dkt. 171 at 12, Exhibit I; *see also* **Ex. A,** Fendrick Decl. at ¶ 10.

- Regarding Defendants argument that Plaintiff did not produce the RoyaltyStat source documents that Mr. Fendrick considered (*see* Dkt. 171 at 15), Mr. Fendrick used RoyaltyStat's source documents for purposes of his comparison but could not use IntangibleSpring's source documents because they were only available through a URL link to an outside server but there was no network access in the review room. **Ex. A,** Fendrick Decl. at ¶ 9. Therefore, both Mr. Fendrick and Mr. Haggerty used the same method – they each based their comparisons on the source documents made available by the party on whose behalf they were engaged. *See id.*

- Defendants incorrectly state that Mr. Fendrick claimed that there was a "high rate of error associated with his methodology" in his deposition. *See* Dkt. 171 at 15-16. This is false. *See id.*, Exhibit B at 108-110.

Defendants appear to argue, albeit unclearly, that Mr. Fendrick's methodology is unreliable; however, Defendants' expert applied many of the same assumptions and protocols in his own analysis. For instance:

- Like Mr. Fendrick, Mr. Haggerty wrote custom scripts and relied on SQL technology to perform the comparison. *Compare* Dkt. 125-52 (Haggerty Report) at 5 *with* **Ex. C**, Expert Deposition of John Fendrick at 37:17-48:12.

- Like Mr. Fendrick, Mr. Haggerty compared the fields, including field titles, in the respective databases. *Compare* Dkt. 125-52 (Haggerty Report) at 9-11, 14-20 *with* Dkt. 135-17 (Fendrick Declaration) at 6-9.

- Like Mr. Fendrick, Mr. Haggerty compared the text in description fields, including a linguistic analysis of the text, in the respective databases. *Compare* Dkt. 125-52 (Haggerty Report) at 23-25 *with* Dkt. 135-17 (Fendrick Declaration) at 13-19.

- Like Mr. Fendrick, Mr. Haggerty looked for FOIA documents in each database. *Compare* Dkt. 125-52 (Haggerty Report) at 13) *with* Dkt. 135-17 (Fendrick Declaration) at 13.

Notably, Mr. Haggerty presented no criticism of Mr. Fendrick's methodology. *See* Dkt. 125-52, Haggerty Report. That lack of criticism is not surprising because Mr. Fendrick's methodology was similar to that employed by Mr. Haggerty. This evidence demonstrates that Mr. Fendrick's methodology is sufficiently reliable because Mr. Haggerty used a similar approach and was able to test the same factors as Mr. Fendrick. The fact that they vary in some specifics of their respective approaches and Mr. Fendrick has reached different conclusions is not a proper basis to exclude under *Daubert*. *Bresler v. Wilmington Trust Co.*, 885 F.3d 178, 195-96 (4th Cir. 2017).

In the end, much of Defendants' arguments are nothing more than advocating for contrary inferences they wish to draw from the evidence. For example, contrary to Defendants' unsupported position, Mr. Fendrick's opinion that IntangibleSpring modified

13

data is based on Exhibit B to the original complaint, which is based on information provided by IP Performance. *See* Dkt. 171 at 14, Exhibit J at 68:10-69:12. As Defendants' own evidence shows, Defendants subpoenaed documents from IP Performance, who objected based on the overbreadth of Defendants' requests. *See* Dkt. 171, Exhibit K. IP Performance never refused to produce documents; it only sought a narrowing of the requests and to be compensated for the cost of compliance under Fed. R. Civ. P. 45(d)(1). *See* **Ex. D**, *Objections to IntangibleSpring Corp.'s Subpoena to IP Performance Group, Inc.*, at 4-11. Defendants threatened a motion to compel (Dkt. 171, Exhibit K at 6) but never sought relief from the Court. The letter from Defendants' counsel confirms that Defendants know that IP Performance accessed IntangibleSpring's database in August 2015, approximately four months prior to the filing of RoyaltyStat's complaint, and that Defendants know the precise searches that IP Performance ran. *Id*. at 2-3. To the extent Defendants wish to deny that the information in Exhibit B actually came from their database in 2015, they can do so at trial.

The Supreme Court has held that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). From this, it follows that the proper vehicle for resolving disputed facts is cross examination, not a motion in limine. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) ("As with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'") (quoting *Daubert*, 509 U.S. at 596); *see also M-Edge Accessories LLC v. Amazon.com Inc.*,

Case 8:15-cv-03940-GJH Document 184 Filed 07/20/20 Page 15 of 18

No. CIV.A. MJG-11-3332, 2015 WL 403164, at *14 (D. Md. Jan. 29, 2015).

Defendants' criticisms boil down to competing conclusions, but that is an issue for trial, not a basis to exclude the expert testimony.

**E.    There is no prejudice in admitting Mr. Fendrick's reliable and relevant testimony**.

The remainder of the motion (Dkt. 171 at 16-21) is a collection of attacks that, at best, go to weight not admissibility, but in the end are consistently unsupported by the evidence or are based on documents that were never produced during discovery (*see* Section B(2) above). For example, Defendants represent to the Court that "[f]or fourteen years, Mr. Fendrick was paid and supervised by RoyaltyStat and its owner Ednaldo Silva." Dkt. 171. at 17. That is not accurate, and it is not what Mr. Fendrick testified to in his deposition. *See id.*, Exhibit A at 47; *see also* **Ex. A,** Fendrick Decl. at ¶ 11. Defendants also represent that his wife, Mary Fendrick, "worked for RoyaltyStat and was directly managed by Mr. Pacheco." Mtn. at 17. This is incorrect. *See* **Ex. A,** Fendrick Decl. at ¶ 12.

Defendants contend that Mr. Fendrick's opinion should be excluded because he is biased in favor of a *former* client of the company for which Mr. Fendrick works. However, "an expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination." *Glass v. Anne Arundel Cty.*, 38 F.Supp.3d 705, 715 (D. Md. 2014); *Pulse Med. Instruments, Inc. v. Drug Impairment Detection Servs., LLC*, 858 F.Supp.2d 505, 515 (D. Md. 2012) (citing 29 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6265 (2011)) ("Alleged bias is ordinarily a question of credibility, not admissibility."). *See also JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 324 n.3 (D. Md. 2017) (holding that expert will not be excluded

15

because of his affiliation with related party where receiving payment for his expert services wholly separate from his income generated as an employee and not receiving any contingency or bonus tied to performance as an expert). Mr. Fendrick's company no longer does work for RoyaltyStat, and has not since 2013, and there are no grounds to find bias, let alone bias that would warrant exclusion.

Defendants attempt to further confuse the issue by arguing that Mr. Fendrick "violated the clean room protocol agreed to by the parties to protect against the disclosure of each party's respective databases. Dkt. 171 at 19. First of all, this is not true. **Ex. A,** Fendrick Decl. at ¶ 9. Second, Mr. Haggerty also "violated" the clean room procedures, according to Defendants' definition: he exported data on a thumb drive and removed it from the review room on multiple occasions:

> Q      So that's helpful. So what I'm really asking is that during the course of the six or seven visits, you, on more than one occasion, took away a thumb drive with information exported; is that correct?
>
> A.      Yes, sir.

*See* **Ex. E,** Haggerty Dep. Tr'n. at 26:6-28:11.

Defendants go further and represent to the Court that Mr. Fendrick "aided RoyaltyStat in avoiding its discovery obligations and in concealing Pacheco's work on the RoyaltyStat database." Dkt. 171. at 20. That is a blatant misrepresentation. The truth is that Defendants' subpoena to Woodbourne Solutions was quashed because their requests were overbroad. *See* Dkt. 88. Woodbourne Solutions produced precisely what Defendants agreed needed to be produced after the Court quashed Defendants' subpoena. **Ex. A,** Fendrick Decl. at ¶ 13. Defendants go as far as to represent that Mr. Fendrick "aided [Dr.] Silva in stealing documents from other competitors" and that "for all intents and purposes," Mr. Fendrick was Dr. Silva's "go-to man for spying on and stealing information from

16

RoyaltyStat's competitors." Dkt. 171. at 21.  This is not true.  **Ex. A,** Fendrick Decl. at ¶ 14.  In fact, Mr. Fendrick's name does not even appear on the exhibit that Defendants claim support their misrepresentation.  Dkt. 171, Exhibit S.

## Conclusion

Mr. Fendrick is well qualified to provide his expert testimony, and his testimony is based on proper methodology, it is reliable and relevant to the disputed issues, and it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  It is thus admissible and Defendants' motion should be denied.


Dated: July 20, 2020                             Respectfully submitted,


                                                 /s/*Billy B. Ruhling, II*
                                                 Billy B. Ruhling, II (Fed. Bar No. 17827)
                                                 Cecil Key (Admitted *Pro Hac Vice*)
                                                 DiMuroGinsberg, P.C.
                                                 1101 King Street, Suite 610
                                                 Alexandria, VA 22314
                                                 Tel: 703-684-4333
                                                 Fax: 703-548-3181
                                                 bruhling@dimuro.com
                                                 *Counsel for RoyaltyStat LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 20, 2020, a true and correct copy of the foregoing was electronically filed using the Court's CM/ECF system, which will automatically serve the following counsel of record:

>John P. Lynch
>McNamee, Hosea, Jernigan, Kim,
>    Greenan & Lynch, P.S.
>6411 Ivy Lane, Suite 200
>Greenbelt, MD  20770
>Tel: 301-441-2420
>Fax: 301-982-9450
>Email: jlynch@mhlawyers.com
>
>John Anthony Di Giacomo
>Revision Legal, PLLC
>444 Cass St., Suite D
>Traverse City, MI  49684
>Tel: 231-714-0100
>Fax: 231-714-0200
>Email: john@revisionlegal.com

>*/s/ Billy B. Ruhling, II*
>Billy B. Ruhling, II (Fed. Bar No. 17827)