# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | | |
|---|---|---|
| RoyaltyStat LLC, | | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| IntangibleSpring, Corp., | * | Case No.: 8:15-cv-03940-GJH |
| | * | |
| and | * | |
| | * | Hon. George J. Hazel |
| Raul Pacheco Quintanilla, | * | |
| | * | |
| Defendants. | * | |

**DECLARATION OF JOHN FENDRICK
REGARDING ROYALTYSTAT LLC'S OPPOSITION TO
MOTION IN LIMINE TO EXCLUDE EXPERT OPINION**

I, John Fendrick, hereby declare as follows:

1. I am the president of Woodbourne Solutions, Inc., located at 12800 Middlebrook Road, Suite 300, Germantown Maryland. I was also retained as an expert in the above-captioned matter and I provided an Expert Declaration on December 14, 2018, a copy of which I understand was submitted to the Court as ECF 135-17.

2. I have reviewed *Defendants' Memorandum in Support of Motion to Exclude Expert Opinion of John Fendrick* ("Defendants' Mtn.") in which certain misrepresentations were made regarding my qualifications and work done both prior to and in the course of reaching my opinion and preparing my Expert Declaration. I submit this declaration to address certain of those misrepresentations.

3. The statements made herein are based on my personal knowledge and experience. I am over the age of 21 and I am competent to testify as to the matters set forth herein.

1

4. Defendants represent to the Court that I do "not write code." Defendants' Mtn. at 8. As noted in my testimony included as Exhibit A, however, I write queries in SQL. Defendants' Mtn., Exhibit A at 27:11-20. SQL stands for "structured query language" and it is a common programming language for managing and organizing the data in a database. I am proficient in SQL, which is what I used to compare the databases at issue. Previously in my career, I "did write code," including in C, C++, Smalltalk, Powerbuilding, ColdFusion, and Java.

5. Defendants represent to the Court that my "previous employment experience has centered on sales and database management." Defendants' Mtn. at 8. That is incorrect. My experience has never focused on sales. In my previous employment, I was a Sales Engineer for UniSQL. My job was to know the functionality and operation of the scaleable and extensible object relational databases sold by UniSQL, and support a salesperson. UniSQL was a very advanced database and my job required me to liaise with a client's or potential client's technical staff as to how to use and integrate the UniSQL databases within their company. This was an engineering, not a sales function as I had to build prototypes for each company interested in acquiring the product and convince them that the database could do everything that they required.

6. My experience has focused on developing databases, including those to be accessed and used online, an area in which I have extensive experience dating back approximately 30 years. For example, I developed the design of a database for a company called FindaResident that scraped data from medical hospital sites to assist medical students in finding positions that matched their qualifications and areas of specialty. The database and site were developed in 2000 and sold shortly thereafter. I also developed the database for a company call MDLinx, which assembled relevant medical articles and provided a daily feed after each article was curated and normalized for publication.

7. I also served as a Principal Consultant for a company called Informix. At the time

that I served that role, Informix was one of the three largest database companies, behind Oracle and Sybase. I received certifications on all Informix's tools and was required to have an extensive working knowledge of the functionality and operation of the Informix database. I worked with Informix clients to implement the Informix database products and improve their operation.

8. That work has continued up through today. At Woodbourne Solutions, as I am the President, I am involved in sales of the products and services Woodbourne Solutions offers, but I am also a project manager and enterprise architect, currently for our government clients. It is therefore inaccurate to say that my experience has "centered on sales and database management."

9. Defendants note as a criticism of my opinion that Defendants' expert, Mr. Haggerty, was not able to review the source documents on which the data in the RoyaltyStat database was based. Defendants' Mtn. at 16. I also was unable to review the source documents on which the data in IntangibleSpring's database was based. The room in which the experts were required to conduct the database comparisons was "air gapped," meaning that that there could be no internet, online network connection or operable USB ports. Defendants' Mtn. at 19. As noted in Table 3 to my report (*see* ECF 137-17 at 12), IntangibleSpring's source documents were only available through a URL link that could not be accessed from within the room. Mr. Haggerty therefore likewise could not access them from the review room. I therefore followed the same protocol as Mr. Haggerty, *i.e.*, neither of us saw the source documents of the opposing database and we each relied on the source documents of the party by whom we were engaged.

10. I understand that Defendants assert that a numeric order was added to Defendants' database at the request of RoyaltyStat's counsel that was based on my request for information I expected to see in the database that Defendants made available for inspection. Defendants' Mtn. at 12, Exhibit I. I did not ask that Defendants alter anything about the database that they made available for inspection. I asked only that expected information be provided.

3

11.     Defendants represent to the Court that "[f]or fourteen years, Mr. Fendrick was paid and supervised by RoyaltyStat and its owner Ednaldo Silva." Defendants' Mtn. at 17. That is not accurate, and it is not what I testified to in my January 15, 2019 expert deposition. *See* Defendants' Mtn., Exhibit A at 47.

12.     Defendants represent to the Court that my wife, Mary Fendrick, "worked for RoyaltyStat and was directly managed by Mr. Pacheco." Defendants' Mtn. at 17. That is incorrect. Ms. Fendrick was employed through Woodbourne Solutions and she assisted on a part-time basis. Her work regarding RoyaltyStat was limited to reading a small number of documents provided by RoyaltyStat and she received supervision and direction directly from me based on directions I received from Dr. Silva of RoyaltyStat. Mr. Pacheco never managed or provided any oversight of Ms. Fendrick.

13.     Defendants represent to the Court that I "aided RoyaltyStat in avoiding its discovery obligations and in concealing Pacheco's work on the RoyaltyStat database." Defendants' Mtn. at 20. This is not true. Woodbourne Solutions was served with a subpoena that sought the same broad range of documents that Defendants apparently now claim Woodbourne Solutions attempted to "conceal." The Court quashed that subpoena in a Letter Order dated August 10, 2018 due to the overbreadth of the requests and undue burden it would have placed on my company to respond. *See* ECF 88. Following the Court's ruling, Woodbourne Solutions cooperated in producing documents of a scope agreed to by the parties. The email Defendants cite in support (Defendants' Mtn., Exhibit T) actually confirms the concern of Woodbourne Solutions that there was a large amount of emails that would need to be individually reviewed and confirmed to be relevant to this case, so the offer was not to conceal but for someone could come to the office of Woodbourne Solutions and review what we had. Later, after receiving the subpoena, Woodbourne Solutions provided additional emails that were not known to exist that the time of

the email that Defendants have included as Exhibit T.

14. Defendants represent to the Court that I "aided [Dr.] Silva in stealing documents from other competitors" and that "for all intents and purposes," I was Dr. Silva's "go-to man for spying on and stealing information from RoyaltyStat's competitors." Defendants' Mtn. at 21. This is not true. In fact, my name does not appear on the exhibit that Defendants claim support their misrepresentation. Defendant's Mem., Exhibit S.

15. There are other inaccuracies and I remain available to provide additional information related to Defendants' Motion should the Court desire.

I declare that all statements made herein are true to the best of my knowledge and belief and that these statements were made with knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated: July 20, 2020

_____
John Fendrick